## WALLACE YOUNG v. THE STATE.

### No. 2063. Decided January 31, 1900.

#### 1. Murder—Evidence—Declarations of Deceased—Res Gestae.

On a trial for murder, where the homicide occurred within some 150 to 200 yards of an election polling place from which the parties were returning home, it is inadmissible to prove that deceased said before starting for home that he was going home because he was afraid defendant and his brother were going to raise a difficulty with him. Such declarations were not res gestae, but were self-serving and incompetent for any purpose.

#### 2. Argument of Counsel—Practice and Duty of Court as to.

Where improper argument has been indulged in by the prosecuting attorney, it is the duty of the court, when requested by defendant, to instruct the jury not to consider the same; and the bare statement of defendant's counsel in the presence and hearing of the court and jury of his objections to and why the argument is illegal does not relieve the court of the duty to instruct the jury to disregard it as requested. It is error for the court to refuse to do so.

#### 3. Murder—Evidence—Proof of Character of a Deceased Party—Cross-Examination.

On a trial for murder, where the defendant had proved by witnesses that his brother, who had been killed by deceased, at the time and place of the killing, was of good, peaceable, and orderly reputation, it was competent for the State on cross-examination of the witnesses to prove that the defendant's said brother had had a difficulty about a year preceding his death.

#### 4. Manslaughter—Provoking Difficulty—Charge.

On a trial for murder, where the evidence raises such issue, it is error for the court to fail or refuse to charge the jury that if defendant provoked or brought on the difficulty without intending to kill or do deceased any bodily harm, and thereafter made a demonstration of simply engaging in a fist fight at the suggestion of such fight by deceased, he would be guilty of no higher offense than manslaughter.

#### 5. Manslaughter—Provoking Difficulty—Adequate Cause—Charge.

On a trial for murder, where the evidence tended to show that defendant sought the difficulty without any apparent intention of killing deceased, and that deceased shot and killed a brother of defendant, whereupon defendant shot and killed him, Held, the court should have charged the jury that if, actuated by such killing of his brother alone and the sudden passion produced thereby, defendant shot and killed deceased, he would be guilty of no higher offense than manslaughter, and it was error to fail to so charge.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. A. C. ALLEN.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary.

Appellant was indicted for the murder of Bob Sutton, on the 8th day of November, 1898, by shooting him with a gun.

The opinion states the case.

No brief for appellant has come to the hands of the Reporter.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of six years.

The following are substantially the facts proven on the trial: Hard feeling existed between appellant and deceased on account of a cattle transaction, and subsequently deceased attempted to indict appellant for the theft of a cow, which angered appellant. On the day of the general election in November, 1898, deceased, appellant, and his brother, George Van Young, were at Stubners, the polling place, in Harris County. Deceased left, starting home on his usual route. Defendant got in his buggy, and followed hastily after him. George Van Young, brother of defendant, followed on horseback. T. R. Cochran was riding with deceased, and they were on horseback at the time of the difficulty, and he testified: "Deceased and myself left the polls after 11 o'clock in the morning, and on our way home, after we were off from the schoolhouse about 250 or 300 yards, Wallace Young, in his buggy, and George Young on horseback, came up. We turned to the right to let them pass. Wallace Young drove up even with us and stopped. He said 'Good morning' to us; and said to deceased, 'I have heard that you have been before the grand jury to get a bill against me.' Sutton said, 'Yes, I have been to Houston.' Defendant said to deceased, 'You are a damned' something. I do not exactly remember the word. It might have been 'damned rascal' or 'damn dirty pup;' something to that effect. Deceased seemed to ask what he was going to do about it. 'Do you want to settle it?' Defendant told him it was all right with him; that he was ready to settle it then. Deceased said: 'I am ready to settle it. Wallace and I will settle it any way you want to.' Defendant then got out of his buggy on the left side, and George Van Young got off from his horse, and stepped in between them. Deceased was still on his horse. It seems then that deceased unbuttoned his vest; and it seemed to me it was going to be a fist fight from his actions. He was still on his horse after he made these motions with his coat and vest. He reached for his saddle pocket. After getting his saddle pockets unbuckled, he pulled out his gun (a 45 Colt's), and I asked and begged him not to do that, or 'Don't do that Bob; don't shoot.' I said that several times. Sutton, as soon as he had his gun out, shot while I was saying, 'Don't shoot;' and shot George Van Young. George Van Young never said a word when Sutton fired. After the second shot, defendant reached and pulled out a Winchester

from his buggy, just while Sutton was firing the second shot at him. Sutton's horse got excited, and ran down the road. All the while Sutton was leaning forward on the horse's neck; all the time firing behind. About fifty yards his horse commenced pitching. Sutton then fell from his horse in the ditch. After falling in the ditch, defendant walked towards him; deceased firing, leaning on his elbow, two more shots at defendant; defendant firing also. George Van Young was killed at the first shot fired by Sutton." Appellant testified in his own behalf: That after he overtook deceased and Cochran, he spoke to them as stated above, and said: " 'Bob, I have heard you went before the grand jury to get a bill against me on account of that Lopez yearling. Is that true?' And he replied: 'Yes, I did. What are you going to do about it?' And I said: 'I think you have acted the part of a low-down pup.' He said, 'Do you want to fight about it?' at the same time throwing back his coat, as if he wanted a fisticuff; and I said, 'I will fight with you,' and got out of my buggy to tie my horse, and fight him a fist fight, as I thought. I walked out in the road away from my Winchester, which I left under the seat, and my brother walked in between us. Deceased was still on his horse. My brother had nothing in his hand, and did not say a word or do a thing. Deceased then pulled his pistol, and shot him down and killed him, and then fired at me; and I then turned, got my gun, and began firing at him; and his horse ran, and he leaned and fired back, and fell in the ditch, and raised on his arm, and fired at me, and I fired at him until I killed him. I do not know how many shots I fired. I had no idea of making a fight to kill him. If so, I would and could have killed him with my gun long before he murdered my brother."

Bill of exceptions number 1 shows: "Counsel for State asked the witness Willis Dillon 'What, if anything, deceased, Bob Sutton, said to him about the reason he was going home;' to which defendant objected, because hearsay, self-serving, and incompetent for any purpose. The court overruled the objections, and permitted witness to state that about five or ten minutes before deceased left he told witness that he was going to leave, and go home, because he was afraid the Youngs were going to raise a difficulty with him." The court qualifies this bill as follows: "The State having rested its case, defendant called witness Willis Dillon for and did prove by him the reputation of George Van Young, when the State, as part of the res gestae, and in view of the fact that the reputation of both deceased, Bob Sutton, and George Van Young had been put in issue by defendant, asked the question of said witness; and the court permitted the same and the answer as set out in said bill; the evidence having shown that the place where the shooting occurred was about 150 to 200 yards from the election polls where the witness said Sutton had made the declaration." We do not think the evidence was res gestae, and believe appellant's contentions are correct,—that the matter is self-serving and incompetent for any purpose. Certainly, an ex parte statement made by deceased before

the difficulty commenced, not being brought home to appellant, could not prove anything in this case. It merely evidences the fears of deceased, and is not criminative evidence on the part of appellant. Johnson v. State, 22 Texas Crim. App., 224.

By bill number 3 appellant excepts to the argument of counsel for State in discussing the fact "that defendant had brought a gun, in his buggy, to the place of election, which was in contravention of, and was punishable under the statutes of this State. The defendant, being apprehensive that such discussion, in the conclusion of the case, to which he had no opportunity to reply, or against which to caution the jury, asked the court to give instructions that they would disregard and give no significance to the fact that the law provided against and punished the carrying of weapons to a polling place; that defendant was not now on trial for such an act, and they would not give any such act any consideration in this case,—which request by counsel for defendant the court refused, which refusal by the court was clearly prejudicial, and did, in connection with the argument of the prosecution, prejudice the minds of the jurors against defendant in this cause, on account of the provisions against carrying deadly weapons to or near a polling place. To which defendant excepted," etc. The following qualification is added: "Counsel for defendant stated all of the foregoing objections to the court in the presence and hearing of the jury, and stated that defendant was not on trial charged with violating the law in carrying weapons to a polling place, but that he was on trial on a charge of killing deceased; and the court declined to give any instruction to the jury about it." We do not think the bare statement of counsel's objection to erroneous and hurtful argument should relieve the court of the duty of charging the law applicable to such conduct, and believe the court should have given the charge asked by appellant.

Appellant also contends that the court erred in permitting "the State to prove that deceased, George Van Young, had had a difficulty about a year preceding his death,—such testimony being offered to counteract the testimony of defendant that he was a man of good, peaceable, and orderly disposition and reputation; such evidence of specific acts being wholly inadmissible for any purpose, except for the purpose of overcoming the testimony of the general good repute of said George Van Young, as there was nothing in the evidence itself, or any concurring evidence, which showed that the particular difficulty which he had was not one most unjustifiably forced upon him, and did not in any way tend to show that he was aggressive, or was not peaceable in his habits." We think this testimony was admissible on cross-examination of appellant's own witness, which witness had testified to the general good reputation of deceased, George Van Young, as being a peaceable and quiet citizen.

Appellant's next contention is "that the court erred in failing to give a charge on the law of manslaughter, which was a part of the law

clearly applicable to the case, and should have informed the jury, if they believed that defendant provoked or brought on the difficulty, but without any intention of killing deceased, or doing him some bodily harm, merely intending to inquire of deceased if he had undertaken to have him indicted, and thereafter made no demonstration of a graver nature than something looking to a simple assault and battery, and that, too, arising on the suggestion of deceased, * * * then, in that event, he would not be guilty of any grade of homicide above manslaughter." We think this contention is clearly within the line of the decisions of this court, and the facts in this case beyond dispute raise the issue. In Meuly v. State, 26 Texas Criminal Appeals, 274, this court said: "Now, if the party's right of self-defense as to its extent —that is, whether perfect or imperfect—depends upon the intention with which he provoked the difficulty, and the intent is a fact to be found by the jury, then it seems clear that the charge of the court in cases where the evidence creates any doubt as to the character of the intent should always instruct the jury as to the distinction between the right of perfect and imperfect self-defense as applicable to the particular act committed by the accused, and the extent of his liability when measured by it." Jackson v. State, 25 Texas Crim. App., 314; Shannon v. State, 35 Texas Crim. Rep., 2; Green v. State, 12 Texas Crim. App., 449; Jones v. State, 17 Texas Crim. App., 612; King v. State, 13 Texas Crim. App., 284.

In appellant's last ground of complaint he insists that the court erred in his charge in limiting the right of appellant to kill deceased to the fact that deceased drew his pistol on, or first shot at, appellant, "and defendant had reasonable apprehension of death or serious bodily injury at the hands of Bob Sutton; and if, acting under such apprehension, defendant thereupon shot and killed deceased, then you will acquit him, unless you believe from the evidence beyond a reasonable doubt that defendant sought the meeting with deceased for the purpose of provoking a difficulty with said Sutton, with intent to take the life of said Sutton, or do him such serious bodily injury as might end in the death of said Sutton. Then, if you so believe from the evidence beyond a reasonable doubt, you are instructed that, if defendant sought said meeting with such purpose and with such intent, defendant would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in self-defense; but, if he had no such purpose and intention in seeking to meet said Sutton, then defendant's right of self-defense would not be forfeited, and he could stand his ground, and defend himself by the use of such means of defense as the facts and circumstances indicate to be necessary to protect himself from danger, or what reasonably appeared to him at the time to be danger." Appellant's criticism to this charge is that it limits his right of defense to himself alone, and does not authorize him to defend his brother under the given state of facts. He also insists that the charge is erroneous in failing to tell the jury that

appellant had the right to kill Sutton in defense of his brother from death or serious bodily harm. The latter clause of the charge we do not think injured the rights of appellant, but gives him the perfect right of self-defense, if he did not intend to kill deceased at the time he provoked the difficulty. As indicated above, we think the court should have charged on both phases of the law of provoking the difficulty. Furthermore, the court should have charged the jury that, if they believed from the evidence that deceased shot appellant's brother, and that appellant had provoked the difficulty, without the apparent intention of killing deceased, and, after deceased had shot appellant's brother, his mind having been rendered incapable of cool reflection, he thereupon shot and killed deceased, either before deceased retreated or afterwards, still appellant, under this state of facts, would not be guilty of any higher grade of offense than manslaughter. In other words, if appellant seeks a difficulty, without the apparent intention of killing, and deceased shot his brother, and actuated by that cause alone, and sudden passion produced thereby, appellant slays deceased, he would not be guilty of any grade of homicide above manslaughter. We do not think the evidence raised the further issue, as contended by appellant, of the perfect right of self-defense on the part of appellant against deceased on account of deceased killing appellant's brother. The judgment is reversed and the cause remanded.

*Reversed and remanded.*