## T. C. STANTON v. THE STATE.

### No. 2232. Decided October 31, 1900.

**1. Murder—Evidence—Former Grudges.**

On a trial for murder, it is admissible to prove that defendant had previously torn down the fence of the party who had deceased employed as a tenant, the tearing down of said fence by defendant again being connected with the circumstances and involved in the killing.

**2. Same—Declarations of Deceased as to His Intentions—Bill of Exceptions.**

On a trial for murder, the declarations of deceased as to his intention and purpose in going to the place of the homicide, made when he started to go to said place, are inadmissible as evidence, unless it be shown that defendant had knowledge of said declarations of deceased. And the bill of exceptions taken to the admission of said testimony must aver and show that such declarations were not known to defendant. If said bill fails to do this, it will be insufficient to raise the question of the admissibility of such testimony.

**3. Bill of Exceptions to Rejected Evidence—Sufficiency.**

It is a general rule that a bill of exceptions saved to the rejection of proffered testimony, must state in terms the object and purpose of the offered testimony; still, if the bill fails to do so, but is so framed as that the object and purpose of said testimony sufficiently appears to every reasonable intendment, the bill will be sufficient to raise the question.

**4. Murder—Defendant's Evidence in Rebuttal.**

On a trial for murder, where the State introduced evidence to the effect that the killing was occasioned by defendant's acts and conduct in previously tearing down the fence of deceased's employer, it was competent for the defendant to show, in rebuttal, that he had not done so; and it was error to refuse to permit defendant to introduce such rebutting testimony.

**5. Manslaughter—Provocation—Charge of Court.**

As a general rule the provocation essential to reduce a homicide from murder to manslaughter, must arise at the time of the homicide; yet a charge which thus limits and restricts the provocation is erroneous, where the evidence shows a number of antecedent happenings between the parties tending to produce a sufficient provocation in connection with what was done at the time of the homicide. And the court should instruct the jury that they could look to such antecedent facts and circumstances in determining the provocation.

APPEAL from the District Court of Stonewall. Tried below before Hon. P. D. SANDERS.

Appeal from a conviction of murder in the second degree; penalty, forty-four years in the penitentiary.

Appellant was charged by the indictment with the murder of Jim Nolan, by shooting him with a gun, on the 21st day of April, 1900.

It appears from the evidence, briefly stated, that G. W. Terry, with whom deceased lived, and defendant, T. C. Stanton, lived adjoining each other on the same section of land. Stanton and Terry had had a difficulty and a fight, but about what, does not appear from the record. Terry and Nolan claimed that Stanton and his boys had torn down their fence. Stanton and his family claimed that Terry and Nolan had shot at their dog, and, in doing so, had endangered the lives of Stanton's children. Bad blood existed in consequence of these matters between the parties. On the day of the killing Stanton, the defendant, was at his garden putting out poison to kill ground squirrels.

He had his double-barreled shotgun loaded with buckshot with him. Nolan went from the Terry place down in the direction of Stanton's garden, saying that he was going to see if Stanton and his boys had again torn down, or were about to tear down, the Terry fence. He had a sixshooter with him.

On the part of the State, the theory was, that Nolan went first and that Stanton followed, waylaid and shot him. The theory of the defense was, that Stanton went first, and that, while he was engaged in putting out the poison, Nolan slipped up a ravine with intent to assassinate him; and that, as Nolan was emerging from the ravine, Stanton saw him, ordered him not to come nearer with his pistol, and that Nolan kept advancing and Stanton shot and killed him.

When Nolan's dead body was examined, his pistol was still sticking in his pants and had not been drawn out.

The two bills of exception are discussed in the opinion of the court, and are so fully stated as to need no further illustration.

*Beall & Beall,* for appellant, filed an able and elaborate brief and argument.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at forty-four years confinement in the penitentiary; hence this appeal.

The theory relied on by the State, was that, because of former grudges of defendant towards deceased, he waylaid and killed deceased without any provocation at the time; that this was murder in the first degree, and a conviction could, at least, be sustained for murder in the second degree. On the other hand, defendant relied on self-defense; that deceased entertained a grudge towards him, evidenced by threats made against him by deceased; that deceased came to where appellant was on his own premises, and there made a hostile demonstration as if to attack him, and that appellant feared danger to his life or serious bodily injury, and shot and killed deceased in self-defense; that, at most, under the circumstances of the case, it could not be more than manslaughter.

Appellant reserved a number of bills of exception, and his assignments of error predicated thereon raise a number of questions which he insists should reverse the case. There are only two, however, which we deem necessary to be considered; the others not involving any error, or, at least, such as are not likely to occur on another trial of the case.

Inasmuch as appellant's second and third bills of exception question the action of the court admitting and rejecting testimony concerning the same matter, we will treat said bills together. Appellant's second bill is in regard to the action of the court admitting certain testimony offered by the State from Mrs. Minnie Terry. The bill is substantially

as follows: "The State introduced in evidence the following testimony of Mrs. Minnie Terry, to wit: 'They (meaning defendant and his boys) had been tearing down our (meaning Terry's) fencing, and Mr. Nolan was going out to look after the fence, and see if they (Stantons) had torn it down again.' This testimony was objected to by the defendant on the ground that it was irrelevant, and calculated to prejudice the minds of the jury against defendant. The objection was overruled, and the testimony admitted." It is insisted on the part of the State that the objection urged to this testimony, to wit, that it was irrelevant, and calculated to prejudice the mind of the jury, is not well taken, as being too general; that some distinct ground of objection should have been stated. Under the decision in Hamblin v. State, 41 Texas Criminal Reports, 135 (decided by a majority of the court), and cases following that, the contention of the State would appear to be correct. However, from an analysis of the testimony admitted, it would appear that the court was correct in admitting evidence to the effect that defendant had formerly torn down the fence of Terry, deceased, at the time being a tenant or in the employ of Terry, and the witness testifying to this matter as a fact. The last portion of the testimony, however, was clearly inadmissible; the bill showing no knowledge by defendant of the declaration of deceased as to his purpose in going down into the field to fix the fence. Brumley v. State, 21 Texas Crim. App., 222; Johnson v. State, 22 Texas Crim. App., 206; Ball v. State, 29 Texas Crim. App., 107. Therefore it follows that the court acted properly in admitting the first part of said testimony, and, the bill of exceptions not raising the question properly as to the admission of the latter portion of the evidence, this was without error.

Appellant's third bill of exceptions is as follows: "The State having been permitted to prove by Mrs. Minnie Terry that deceased, Nolan, left the house just before the killing to look after the fencing where they (defendant and others) had been tearing the fencing (meaning Terry's) down, defendant offered to prove by J. D. Patterson that about one month before the killing he had put a wire gate in the fence which had been constructed by George Terry on a road running from his (Patterson's) house to his farm, and that there had been no other fencing removed or torn down; that defendant had nothing to do with the removal of the fence, and had not torn down any fencing on the premises; to which evidence the State objected, and the court sustained the objection, and refused to permit the testimony." While this bill, as contended by the State, does not, in terms, point out the purpose for which the testimony offered by defendant was desired, yet we think to every reasonable intendment this sufficiently appears. The testimony which the State adduced on this point is set out in the bill, and then it is stated that defendant desired to introduce the following testimony on the same issue. Obviously this testimony was offered to rebut or contradict the testimony offered on the point by the State. As we have seen in the discussion of

the preceding bill, while as to a part of said testimony, though it was improper, no sufficient objection was urged thereto, and it may be said that the court did not err in admitting it, because the objection that it was irrelevant merely did not point out a sufficient ground of objection, but a part of said testimony was admissible, as we have seen—that is, that defendant had previously torn the Terry fence down—it occurs to us that certainly, when defendant desired to rebut this testimony, the court should have permitted it. We gather from the record that the parties—that is, Patterson, who sided with defendant, and Terry, who sided with the deceased—all lived on the same section of land, and they were contesting as to their ownership, or possibly as to the metes and bounds of the same, and this matter of tearing down the fence appears to have been a cause of grievance, and involved in the homicide; and for the court to have permitted the State to prove that defendant had previously torn down this Terry fence, and then to refuse to allow defendant to rebut this evidence and show that he had not done so, was to present him to the jury in the attitude of a bare trespasser and wrong-doer. The jury should have had the benefit of the testimony on this issue pro and con, and then have been left to decide this important matter for themselves. We think the bill sufficiently raises the question, and that that part of the testimony showing that defendant had not torn down the fence was admissible in rebuttal of the State's testimony on the same subject.

Appellant complains that the charge of the court on manslaughter is too restrictive, in that it limits the provocation to the time of the homicide. As a general proposition this is correct. As we understand the authorities, the provocation must arise at the time of the homicide, except in the case of an insult to a female relative, which is regulated by statute. However, wherever there is testimony in the case tending to illustrate, or to intensify or render more significant the act of provocation at the time, the court should direct the jury to consider such facts and circumstances in connection with the act of provocation at the time. What might not be sufficient provocation standing alone, yet, in the light of what had preceded it, might be rendered very significant, and be considered by the jury as a sufficient provocation to produce hot blood in a person of ordinary temper. Such we understand to be the condition of the authorities on this subject. White's Ann. Code Crim. Proc., sec. 1196, and authorities cited; Spangler v. State, 41 Texas Crim. Rep., 424. We have examined the record carefully, and the statement of facts shows a number of antecedent happenings between the parties tending to produce hot blood on the part of the defendant, or, at least, tending to intensify any act or demonstration of the deceased at the time, and we believe the court should have instructed the jury that they could look to such antecedent facts as circumstances tending to shed light upon what was done at the time, in order that the jury might determine whether or not the provocation was sufficient

to produce hot blood. The charge did not do this. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*