### Fred Burnett v. The State.

#### No. 2833. Decided March 9, 1904.

**1.—Evidence—Motive of Deceased Immaterial.**

In a trial for murder where the evidence showed that defendant and deceased had had a quarrel about an hour and a half before the homicide and that in separating after the first quarrel defendant heard deceased ask for a gun, which was refused him, and that defendant then left, it was error to admit in evidence the acts of the deceased after said separation and not done in the presence or with the knowledge of defendant, either to show that deceased had abandoned the quarrel or the length of time elapsing between the first quarrel and the homicide.

**2.—Charge of the Court—Instrument Used.**

Where the evidence raises the issue that defendant used a pistol in self-

defence, it is error to charge on the means or instrument used by which a homicide is committed to judge of the intent of defendant.

**3.—Practice in District and County Courts.**

When a judge charges the jury that they are bound to receive the law from the court and be governed thereby, it is suggested that he should inform the jury when he submits requested charges that they are part of the court's charge.

Appeal from the District Court of Fannin.   Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the second degree; penalty, thirty years imprisonment in the penitentiary.

The facts in so far as they are necessary to an understanding of the case are stated in the opinion.

*Thurman & Steger,* for appellant.—The question of intention to kill was not raised. The only question was the one of self-defense vel non. Bell v. State, 17 Texas Crim. App., 538; Shaw v. State, 34 Texas Crim. Rep., 435.

When one is charged with murder "everything that could operate upon his mind may be proved, but you can not give in evidence the conversation or acts of the deceased which never came to the knowledge of the defendant, for they could have no influence upon his mind." Sebastian v. State, 57 S. W. Rep., 820; Castner v. State, 57 S. W. Rep., 821; Brumley v. State, 21 Texas Crim. App., 222; Nelson v. State, 58 S. W. Rep., 107; Gilcrease v. State, 33 Texas Crim. Rep., 619; Johnson v. State, 22 Texas Crim. App., 206; Fuller v. State, 30 Texas Crim. App., 559; King v. State, 13 Texas Crim. App., 277; Ball v. State, 29 Texas Crim. App., 107; Wooley v. State, 64 S. W. Rep., 1054; same case, 3 Texas Ct. Rep., 236; Adams v. State, 5 Texas Ct. Rep., 33; same case, 64 S. W. Rep., 1055.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The punishment assessed was thirty years in the penitentiary for murder in the second degree. A sufficient statement of the evidence shows that defendant and deceased had a rather heated quarrel near the hardware store of Thompson & Abernathy, in the town of Bonham. They separated at a distance of about forty-five feet from the store, defendant going east and then north, and deceased going west to the store. Deceased left appellant with the avowed intention of getting a gun to be used on defendant, and with this purpose in mind went to Abernathy, who was at the time in front of his store, and inquired the cost of hiring a gun for fifteen minutes. In reply to Abernathy's question, deceased stated he wanted it for the purpose of killing a mad dog in Lockboro, which seemed to be an addition to the town of Bonham. Abernathy told deceased that he did not want to kill a mad dog; that deceased was mad, and to go off and get cool. Defendant seems to have heard this conversation, as he (defend-

ant) was going away from deceased. The witnesses Wethersby, Lock, Moore and Frazier were permitted to testify to matters and conversations that occurred after appellant had gotten out of sight and hearing of deceased, between these witnesses and deceased, covering a period of perhaps an hour to an hour and a half. Defendant and deceased met later on during the day in the Locksboro addition; and in a difficulty between them appellant shot and killed deceased under circumstances which he claims made his case one of self-defense. The State's case justified the verdict of murder in the second degree.

Exception was reserved to the testimony of Wethersby, Moore, Frazier and Lock. The bill of exceptions with reference to Wethersby's testimony, after stating the conversation between Abernathy and deceased, which defendant is supposed to have heard, further shows that defendant saw deceased go into the hardware store, and heard deceased ask for a gun, and after witness had heard deceased say he would get a gun and kill defendant, that defendant left the scene of the trouble and disappeared from witness' view. And he was permitted to further testify as to all the acts of deceased, and the witness going to Graham, Crawford & Co.'s store, loading drays with empty boxes, moving the boxes from the front to the rear of the store and unloading them; that he went to another store and carried a piano box from upstairs downstairs, and did other things about their business with their drays. And in about an hour deceased went with his dray to Boswell's store and took on a load of furniture and drove north to Locksboro, where the killing occurred about an hour or an hour and a half after the quarrel between deceased and defendant. Bill of exceptions with reference to Moore's testimony recites that after defendant and deceased quarreled, near the hardware store of Abernathy, and after deceased had gone to Abernathy and sought to rent a gun for fifteen minutes, and after Abernathy had informed deceased he had no use for the gun to kill a mad dog in Locksboro, etc., and while defendant was neither in sight nor hearing of deceased or Moore, that Moore and deceased went with drays to the store of Graham and Crawford and moved boxes from the front to the rear of the store; and thence to another place and moved a piano; and subsequently loaded furniture on the dray, which deceased was driving at the time he was killed; and that another man had intended to take the dray of said furniture to Locksboro, but the other man's family was taken sick, and it was then decided to substitute deceased for the other man to drive the dray of furniture to Locksboro, etc. The testimony of Frazier to which exception was reserved was to the effect that deceased came to him, and talked with him after the first difficulty between deceased and appellant, and that the witness went immediately in search of defendant, and defendant was just leaving the store of Lovelace, where he was working as deliveryman, and witness was constable. Lock was permitted to testify that after deceased and defendant had their quarrel at Abernathy's store, and after defendant had gotten out of sight, and

deceased had gone after his gun with which to kill deceased, he stated that he went to Constable Frazier and talked to him in regard to the matter, and Frazier went immediately in search of defendant, etc. Various objections were uged to the introduction of this testimony. .The court signed the bill reserved to Wethersby's testimony, as he did the bill reserved to Moore's testimony, with the explanation that the evidence was not introduced for the purpose of showing that deceased had abandoned the purpose of getting a gun to kill defendant, but to show the time elapsing between the quarrel near Abernathy's store and the killing. These matters were not necessary to prove time. This could have been arrived at without going into the details of the occurrences. "It is a maxim of the law that a man is only bound so far as matters reasonably appear to him; he can not be bound by the motives locked up and hidden in the breasts of others. The undisclosed and undiscovered motives and acts of the deceased are not a material issue, and could throw no light whatever upon the guilt or innocence of defendant, whose motives alone were the important issue to be tried." Johnson v. State, 22 Texas Crim. App., 206. In order to have justified the introduction of this testimony, it should have been shown that appellant was informed or had knowledge of these matters. Of course, he knew the time elapsing between the first and second difficulty, but nowhere in the record is it attempted to bring home to him knowledge of these occurrences, or anything on the part of deceased indicating an abandonment of his threats, or that deceased had in any manner determined to abandon his express and avowed intention of using the pistol. Brumley v. State, 21 Texas Crim. App., 222; Fuller v. State, 30 Texas Crim. App., 559; Ball v. State, 29 Texas Crim. App., 107; Gilcrease v. State, 33 Texas Crim. Rep., 619; Phipps v. State, 34 Texas Crim. Rep., 560; Adams v. State, 5 Texas Ct. Rep., 33; Young v. State, 55 S. W. Rep., 331; Sebastian v. State, 57 S. W. Rep., 820; Woodward v. State, 51 S. W. Rep., 1122; Nelson v. State, 58 S. W. Rep., 107; Stanton v. State, 59 S. W. Rep., 271; Stell v. State, 58 S. W. Rep., 75; Wall v. State, 62 S. W. Rep., 1062; Wooley v. State, 64 S. W. Rep., 1054.

If these acts and declarations, and this conduct, had been communicated to appellant, and he had been advised of the fact that deceased had expressed any relinquishment of the idea of killing him, this testimony would have been admissible; but in the absence of this character of showing this testimony should have been rejected under the foregoing authorities.

Exception is reserved to the fifteenth paragraph of the charge, which is as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." This

charge, under the facts, should not have been given. There was no question as to the intent of the party, for appellant used the pistol and used it fatally. Article 717, Penal Code, does not apply to this character of case, and only becomes a part of the law of the given case when the intent is to be judged in part from the instrument used; that is, if it is one not likely to produce death it is not to be presumed that the death was designed, unless from the manner in which the instrument is used such intent evidently appears. Where a party uses an instrument not likely to produce death by the manner and means of its use, but death does occur, this statute may become a part of the law. But, as we understand, it never applies unless the intent is an issue in the case. This was a case of self-defense from the defendant's standpoint; and if the acts and conduct of deceased induced appellant to believe his life was in danger, he had the right to draw his pistol and fire and continue to fire until all danger was passed. So there was no question of his intent. He was seeking to justify his act bringing about the homicide.

The court, at the conclusion of the charge, after informing the jury that they were the exclusive judges of the facts proved, of the credibility of the witnesses, and the weight to be given their testimony, further charged the jury: "You are bound to receive the law from the court, which is herein given you, and be governed thereby." After reading this charge to the jury, appellant requested three special charges, which were given. Appellant contends that by inserting the clause complained of, it practically eliminated them from the consideration of the jury as the law and confined the jury exclusively to the law as given in the court's main charge. Where the court gives special requested instructions, it is the better practice to inform the jury that these charges are to be considered as if embodied in the charge given by the court; and if the clause to which the exception is reserved is calculated to impress the jury with the idea that the special charges are not to be so considered, this clause should either be omitted, or the jury should be instructed, as before stated, to consider the requested charges as part of the court's charge, so as to avoid any complications of this sort.

There are other exceptions to the charge, but taking the charge as a whole we believe the law of manslaughter and self-defense were sufficiently given.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*