### ALFRED MORRIS HJERONYMOUS v. THE STATE.

No. 2949.   Decided November 30, 1904.

**1.—Murder in Second Degree—Charge of the Court—Manslaughter—Facts Stated.**

Where the testimony of appellant, who was on trial for the murder of his mother-in-law, was that his brother-in-law and others had given him a beating, pushed him out of the house, and were beating him over the head, shortly before he fired the fatal shot which missed the brother-in-law and killed the mother-in-law, the court should have submitted the issue of manslaughter.

**2.—Jury and Jury Law—Practice in District Court.**

Where the jury took into their retirement the indictment upon which the verdict of conviction on a former trial was written, without the knowledge or consent of appellant, who was again on trial for murder upon the same indictment, such practice was contrary to the statute which forbids reference to a former trial and conviction, although as the point is presented it may not have been reversible error.

Appeal from the Criminal District Court of Galveston.   Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree, penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson* and *Aubry Fuller*, for appellant.—The court refused and failed to submit to the jury in the court's charge the issue of manslaughter, as raised by the evidence. This is assigned as error. McLaughlin's case, 10 Texas Crim. App., 340; Neyland's case, 13 Texas Crim. App., 536; Rutherford's case, 16 Texas Crim. App., 649; Orman v. State, 24 Texas Crim. App., 495; Bonner v. State, 29 Texas Crim. App., 223; Hopkins v. State, 50 S. W. Rep., 381; Folks v. State, 58 S. W. Rep., 98; Hall's case, 60 S. W. Rep., 769.

Defendant says it was fundamental error on the part of the court to

allow the jury to take with them into the jury room and into their deliberations the original indictment filed in said cause, for this, because on the face of said indictment and at the bottom thereof, written plainly in ink, is fully set out the verdict of the jury which formerly convicted defendant at the first trial of this cause and adjudged him guilty of murder in the second degree and affixed his punishment at five years confinement in the penitentiary, thus informing the jury that the defendant had not only once before been tried for the offense they were now considering, but that he had been found guilty by a former jury, as shown by a certified copy of said bill of indictment attached to defendant's second motion for new trial, all of which was prejudicial to the substantial rights of this defendant, and is here assigned as fundamental error. Art. 283, White's P. C.; Richardson v. State, 33 Texas Crim. Rep., 180; Lancaster v. State, 36 Texas Crim. Rep., 16.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Conviction of murder in the second degree, five years in the penitentiary being the penalty assessed. This is the second appeal; the former conviction having been reversed at our last Dallas Term. 9 Texas Ct. Rep., 805.

The court failed to charge on manslaughter, and reversal is sought on this account. The difficulty arose over a child. Appellant and his wife had separated. She had gone to the home of her father and mother, leaving the child with him. During the evening preceding the homicide at night, she went after and took the child from the possession of the woman who had charge of it for appellant, while he was absent. He went to see his wife about it, at her father's residence; but she was not at home. He returned later and found her. A conversation occurred, in which the wife had practically agreed that appellant should take the child home with him, when her brother, John Cranston, said that she ought not to let him have the child; and the trouble began. Appellant started from the gallery, where he was standing, into the hallway of the house to see his child. Under appellant's statement, John Cranston, his brother-in-law, began with the others to beat him over the head, that he remarked to John: "If you want to kill me, kill me; but I must see my child." Appellant then further states, "They then pushed me out of the house, and were beating me over the head. I made no effort to strike a blow or do any injury to any person until after John Cranston fired at me. I never had any words with old lady Cranston." After John Cranston fired at appellant, he pulled his pistol and began firing. There were about eight shots fired, John Cranston firing five, and appellant three. During the shooting, appellant's mother-in-law, Mrs. Cranston, was shot in the breast, the ball coming out near the middle of her back. Appellant's theory is that her son killed deceased in shooting at him. Another theory is, that appellant killed the mother-in-law, in shooting at the son. State's contention is, and sup-

ported by the evidence of John Cranston, that appellant, without any provocation, except the quarrel about the child, pulled his pistol, walked up to his mother-in-law, placed it against her breast and fired, killing her. This statement is perhaps sufficient to dispose of the question of manslaughter. This presents four theories; first, murder, if John Cranston's testimony is true; second, murder, if defendant began the difficulty by shooting at John Cranston, and accidentally shot his mother-in-law; third, manslaughter, if because of the beating, appellant fired at John Cranston before John Cranston fired at him, and thus killed his mother-in-law; fourth, self-defense, if he killed the mother-in-law, in shooting at John Cranston, after John Cranston began firing at him. If appellant's testimony is to be credited by the jury, to wit: that the parties set up and began beating him, and he fired on account of this conduct, it would be manslaughter. This phase of the law should have been presented to the jury. It may be well enough to state that the facts on this appeal are somewhat different from those on the former appeal, and presents the issue of manslaughter. McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 Texas Crim. App., 536; Rutherford v. State, 16 Texas Crim. App., 649; Orman v. State, 24 Texas Crim. App., 495; Bonner v. State, 29 Texas Crim. App., 223; Hopkins v. State, 50 S. W. Rep., 381; Folk v. State, 58 S. W. Rep., 98; Hall v. State, 60 S. W. Rep., 769.

The court charged the jury that appellant would be guilty of murder in the second degree, if he fired at John Cranston, acting with implied malice aforethought towards John Cranston, and missing him killed his mother-in-law. Manslaughter was not given. It should have been charged. If he shot at John Cranston, on account of the beating John and the others had given him, and his mind was then laboring under such excitement or passion as rendered it incapable of cool reflection, and the killing occurred on this state of case, he would be guilty only of manslaughter. Of course, if he shot at John Cranston after John had shot at him, that would be self-defense.

There is another question suggested for reversal. When the jury retired, they were handed and carried with them, the indictment, upon which was written the former verdict, finding appellant guilty of murder in the second degree, and assessing his punishment at five years in the penitentiary. This verdict was plainly written, and upon their return into court, the verdict in this case was written immediately under the former verdict, assessing the punishment the same and for the same offense as previously given. The indictment was carried out by the jury, without the knowledge or consent of appellant and without the knowledge of the court. This should not have been permitted. If the former verdict had been admitted in evidence over the objection of defendant, it would have been reversible error. It would be plainly violative of the statute which forbids reference to a former trial and conviction, or an allusion to it. Here the facts are uncontroverted that the jury did have this former verdict before them in their retirement.

It was evidence of the former conviction, and was not justified. It is expressly prohibited by the statute, and was injurious to appellant. We call attention to this matter so that it may not occur upon another trial or in future trials. As presented by this record this may not be reversible error as it is not made to appear that the jury was aware of the existence of the former verdict until after their agreement to convict, and no fact is shown that it was used by the jury in arriving at their verdict or was even so known to them.

Newly discovered evidence is also made a ground of the motion for new trial. This can be obtained upon another trial, and a discussion of it is not indulged.

For the errors indicated, the judgment is reversed and the cause remanded. · *Reversed and remanded.*