or until next Sunday, Sept. 3rd, at noon, I will leave for Jasper, Texas."

The witness Walker, continuing, testified that on September 1st or 2d he saw Lula Hawlan at his boarding house, and that she inquired for appellant and was shown appellant's room. Shortly afterwards, he saw Lula Hawlan come out of appellant's room, carrying a small package. He did not know what the package contained, or whether she got it from appellant, or paid her therefor.

The state then offered to prove by the records of the district clerk's office of Sabine county, Tex., that the appellant had no credentials, certificate, diploma, or other authority to practice medicine in said county, registered in the records of said clerk's office. Thereupon appellant "admitted that she had not registered nor filed in said district clerk's office any certificate, diploma, or anything else, showing her authority to practice medicine in Sabine county, Texas."

[2] From this testimony, which is uncontroverted, it clearly and without doubt appears that the appellant practiced medicine in said Sabine county, Tex., on and before September 1, 1911, and that she so advertised herself and received pay for her practice and for medicine that she sold for the treatment of diseases.

Appellant complains of the charge of the court, in that it authorized a conviction of the appellant upon transactions occurring prior to September 1, 1911, claiming that, as each day of practice was a separate offense, and the state having carved the 1st and 2d days of September as the days on which the offense was alleged, such charge was reversible error. An inspection of the information, above quoted, shows that the state did not carve either or both of those days to charge the commission of the offense, but, instead, by its terms it excluded the 2d day of September, 1911, and charged that the offense was committed "on or about the 1st day of September, 1911." It is true the state could have carved, as each day was a separate offense; and, if the allegations in the information had charged the offense was committed on that particular date, and no other, then the proof and charge should have been so limited; but, in this case, instead of carving for said date of September 1, 1911, or any other specific time, embraced the whole of the period on and prior to September 1, 1911, to within the period of limitation. All this, of course, was to the appellant's advantage, and not her disadvantage; and, if convicted, as she was in this case, and the proof embracing a period of from the early summer of 1911 up to and including September 1, 1911, this conviction would be a bar to any and all other offenses in said county for any time within such period. Novy v. State, 138 S. W. 140; Fleming v. State, 28 Tex. App. 234, 12 S. W. 605; Huffman v. State, 23 Tex. App. 491, 5 S. W. 134.

What we have said above disposes of all of the questions raised by appellant, and it is unnecessary to take up each separately and further discuss them.

The judgment is affirmed.

## JOHNSON v STATE.

(Court of Criminal Appeals of Texas    May 29, 1912.)

1. HOMICIDE (§ 169*) — EVIDENCE — KNOWLEDGE OF DECEASED'S PURPOSE.

Evidence as to the purpose of deceased in going to defendant's house or premises, not known to defendant, was inadmissible.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 341–350; Dec. Dig. § 169.*]

2. HOMICIDE (§ 338*) — APPEAL—HARMLESS ERROR — ADMISSION OF EVIDENCE—DEFENDANT'S KNOWLEDGE OF DECEASED'S PURPOSE.

In a prosecution for murder, where manslaughter and self-defense were issues, and where it appeared that on a prior occasion deceased had gone to defendant's house to collect a bill, that trouble arose between them, that deceased was ordered not to return and left, making serious threats against defendant, and that defendant did not know for what purpose deceased came to his premises at the time of the homicide, the admission of evidence that deceased had gone to defendant's premises to collect a bill, after such statement in a dying declaration had been withdrawn, was reversible error.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 709–713; Dec. Dig. § 338.*]

3. HOMICIDE (§ 190*) — ADMISSION OF EVIDENCE — THREATS — SUBSEQUENT DECLARATION OF PACIFIC INTENT.

Where the deceased has made threats against the accused, his subsequent declarations of pacific intent, not communicated to the accused, are not admissible.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 399–413; Dec. Dig. § 190.*]

4. WITNESSES (§ 54*) — COMPETENCY — HUSBAND AND WIFE.

The evidence of a wife cannot be used against her husband, unless the offense is that of personal violence against the wife.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 142–146, 152; Dec. Dig. § 54.*]

5. WITNESSES (§ 76*)—COMPETENCY OF WIFE AS WITNESS—OBJECTION.

A wife cannot be used as a witness against her husband, even though no objection is urged at the time.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 190–192; Dec. Dig. § 76.*]

6. WITNESSES (§ 54*) — IMPEACHMENT—COMPETENCY OF IMPEACHING TESTIMONY.

Testimony of defendant's wife, given before the grand jury under process and without defendant's knowledge, not competent against defendant as original testimony, cannot be used against him indirectly as testimony tending to impeach the wife by a contradiction between her testimony before the grand jury and at the trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 142–146, 152; Dec. Dig. § 54.*]

7. CRIMINAL LAW (§ 719*) — TRIAL — ARGUMENT OF PROSECUTING ATTORNEY.

In a prosecution for murder, where a statement in a dying declaration, that deceased had gone to defendant's house or premises to collect a bill was excluded, the county attor-

ney's statement to the jury: "He shot an un-armed man; shot him in the back, because he went there to collect a bill. 'He ordered me out, and before I got out he shot me—'" was reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1669; Dec. Dig. § 719.*]

Appeal from Criminal District Court, Dallas County; Barry Miller, Judge.

J. W. Johnson was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Brooks & Worsham, of Dallas, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of murder in the second degree; his punishment being assessed at 51 years in the penitentiary. This is the second appeal. The first may be found in 138 S. W. 1021.

The , dying declaration of the deceased, over appellant's objections, was permitted to go to the jury. It reads as follows, and was introduced through the witness Watson, the physician who attended the deceased, Mc-Guffey, after he was shot: "Deceased said: 'I went up to that man's place. I do not call any names; but I went up there to collect a bill. He saw me and told me to get out of his place. I told him, "All right," to give me time, and I would get out. He run for his gun as I went out at the door. He shot me in the side.' And he says, 'If you will look in the screen door,' pointing his finger at me, he says, 'you will see the hole.' Then deceased said: 'I ran up the street. He shot me in the back, and that is what is killing me.' Deceased further states that 'appellant shot me for nothing.'" Many objections were urged to this testimony, which were overruled, and it went before the jury. After this testimony was admitted, the court took a recess for noon; and, after the witness Dr. Watson had been retired and the court reassembled, the court instructed the jury verbally, as follows: "Gentlemen of the jury, this morning the witness on the stand testified to what purported to be a dying declaration on the part of Levi McGuffey. In his testimony there occurred this sentence, 'I went out there to collect a bill.' That much of that testimony is stricken out. You will not consider it for any purpose whatever. The rest of the testimony stays in." It is contended in the bill, and so asserted, that this effort of the court to withdraw the testimony but intensified the error; and that the testimony was of such character that it could not be withdrawn, and that it was highly prejudicial to appellant's legal rights, and especially in regard to his right of self-defense and apparent danger. It is further contended that the error could not be cured by the withdrawal of it by the court, nor by a casual statement by the court to the jury to dis-

regard it. The above is shown by bill of exceptions No. 2.

By bill No. 3 it is shown that the witness Smith was permitted to testify at some length, among other things, that he had dealings with appellant, and that appellant had bought two bills of furniture from him, one something like a year prior to this trouble, which he had paid for; and the second bill had been running several months. The prosecution was then permitted to ask the witness as follows: "Q. That bill of goods necessitated somebody collecting for it, did it? A. Yes, sir. Q. That was the contract that you had, was it not? A. Either him to bring it in, or us to send a collector; yes, sir. Q. Now, did you detail Mr. McGuffey to do that collecting? A. I hired Mr. McGuffey to do our collecting; yes, sir. Q. Was that one of his duties? A. Yes, sir. Q. To collect from this defendant? A. Yes, sir. Q. Now, two or three weeks, or four weeks, before the killing, had Mr. McGuffey reported to you that there had been some trouble over the bill? (Objected to as leading and sustained.) Q. Did Mr. McGuffey, in his life-time, ever make any statement to you with reference to collecting from this defendant? (Objected to and sustained.) Q. Do you know that Mr. McGuffey went to Mr. Johnson's restaurant before he was killed? A. Yes, sir." The bill further recites that the defendant's evidence showed that defendant did not know for what purpose the deceased came to his restaurant on the morning of the killing. Various objections are urged to the introduction of this testimony. Among others, that it was irrelevant, immaterial to any issue in the case, and that for whatever purpose the deceased had been sent or came to defendant's place of business was unknown to the defendant, and tended to impair his right of self-defense in acting on real or apparent danger, and requested the court to disregard this evidence. These objections were overruled, and the evidence remained before the jury. These two bills, considered together, necessitate a reversal of this judgment. It is shown by Smith that the deceased, McGuffey, went there as the agent of Smith to collect for Smith for certain furniture sold to appellant.

[1, 2] The bills further recite that appellant was ignorant of the purpose for which deceased came. Under all the authorities, this testimony is inadmissible. The court recognized this in regard to the dying declarations, and withdrew that particular part of the dying declaration from the consideration of the jury, as indicated by bill No. 2, in an oral instruction to that body. But the witness Smith shows that the deceased was collecting for him, and went to appellant's house for that purpose. It is a difficult proposition sometimes for the courts to decide whether the withdrawal of illegal testimony cures the error. The evidence in re-

gard to the deceased going to the residence of Johnson was' one of the crucial points in the case, perhaps the most crucial. This bore directly upon two issues in the case—manslaughter and self-defense. The testimony for the defense is to the effect that on a prior occasion the deceased went to appellant's house to collect money on the unpaid bill due Smith. Trouble had arisen between deceased and the appellant in regard to the matter, and the deceased was ordered not to return to appellant's house. Deceased left at the time, making serious threats against appellant. On the occasion of this tragedy, the evidence for the appellant shows that he did not know, and the bill of exceptions recites that he did not know, why the deceased was in his house. Appellant's testimony further shows that when he first observed deceased he was standing by the bedside of his wife, who was asleep or lying down in her bedroom. This was the beginning of the difficulty which led to the shooting. Under this condition of things, the undiscovered or undisclosed reason of 'deceased's visiting the house of appellant was illegitimate testimony, and hurtful and injurious. Taking these two bills together, this injury is of such a nature as requires a reversal of this judgment. Under all the authorities, this testimony was clearly inadmissible, and a stroke at the very keynote of appellant's legal rights in the case. See Brumley v. State, 21 Tex. App. 238, 17 S. W. 140, 57 Am. Rep. 612; Johnson v. State, 22 Tex. App. 206, 2 S. W. 609; Pratt v. State, 53 Tex. Cr. R. 289, 109 S. W. 138; Clark v. State, 56 Tex. Cr. R. 298, 120 S. W. 179; Gant v. State, 55 Tex. Cr. R. 291, 116 S. W. 801; Gray v. State, 47 Tex. Cr. R. 377, 83 S. W. 705; Burnett v. State, 46 Tex. Cr. R. 119, 79 S. W. 550; Clay v. State, 44 Tex. Cr. R. 137, 69 S. W. 413; Adams v. State, 44 Tex. Cr. R. 67, 68 S. W. 270; Ball v. State, 29 Tex. App. 125, 14 S. W. 1012; Darnell v. State, 58 Tex. Cr. R. 585, 126 S. W. 1122.

[3] The doctrine has been clearly announced in an unbroken line of decisions in this state that, where the deceased has made threats against the accused, his subsequent declarations of pacific intent, not communicated to the accused, are not admissible. Johnson v. State, 22 Tex. App. 224, 2 S. W. 609; Adams v. State, 44 Tex. Cr. R. 66, 68 S. W. 270; Adams v. State, 64 S. W. 1055; Wooley v. State, 64 S. W. 1054; Woodard v. State, 51 S. W. 1122; Stanton v. State, 42 Tex. Cr. R. 271, 59 S. W. 271; Ball v. State, 29 Tex. App. 125, 14 S. W. 1012; Gant v. State, 55 Tex. Cr. R. 291, 116 S. W. 801; Burnett v. State, 46 Tex. Cr. R. 119, 79 S. W. 550; Young v. State, 41 Tex. Cr. R. 445, 55 S. W. 331; Pratt v. State, 53 Tex. Cr. R. 289, 109 S. W. 138; Nelson v. State, 58 S. W. 108; Wall v. State, 62 S. W. 1062. We think, without citing further authorities,

these are sufficient to show the thoroughly established rule in Texas.

[4-6] Another bill, rather voluminous, shows that the wife testified for the husband. On her cross-examination, the state was permitted to lay a predicate to impeach her as to her testimony given before the grand jury, which testimony is claimed to be contradictory of the testimony she gave before the jury. Objections were urged both to the predicate and the subsequently introduced evidence given before the jury. The bill recites and shows that while her husband was in jail she was subpœnaed and carried before the grand jury as a witness, and gave testimony which the state thought to be contradictory before the petit jury. Upon her examination in regard to the predicate, she stated she did not recollect certain references to the testimony before the grand jury, not specifically denying anything. Many objections are urged to this testimony which, we think, were well taken. The wife cannot be used as a witness against her husband. She was carried before the grand jury, as the bill recites, under process and there testified, and the evidence was used on the final trial against her husband under the guise of impeachment. That this testimony could not have been used against the appellant as original testimony is not to be questioned; yet it is indirectly used against him as impeaching testimony of the wife. The evidence of the wife cannot be used against the husband, except in cases where the offense is by the husband against the wife, which means personal violence against the wife. And she cannot be used as a witness against her husband, even though objection is not urged at the time. This is not an open question in Texas. Brock v. State, 44 Tex. Cr. R. 335, 71 S. W. 20, 60 L. R. A. 465, 100 Am. St. Rep. 859; Davis v. State, 45 Tex. Cr. R. 295, 77 S. W. 451; Moore v. State, 45 Tex. Cr. R. 237, 75 S. W. 497, 67 L. R. A. 499, 108 Am. St. Rep. 952, 2 Ann. Cas. 878; Ray v. State, 43 Tex. Cr. R. 236, 64 S. W. 1057; Spivey v. State, 45 Tex. Cr. R. 496, 77 S. W. 444; Hobbs v. State, 53 Tex. Cr. R. 71, 112 S. W. 308; Stewart v. State, 52 Tex. Cr. R. 273, 106 S. W. 685; Yeiral v. State, 56 Tex. Cr. R. 267, 119 S. W. 848; Woodall v. State, 58 Tex. Cr. R. 513, 126 S. W. 591. The case of Woodall, supra, is directly in point, where the testimony of the wife was used against the defendant, when that testimony had been delivered before the grand jury. The introduction of this evidence for any purpose was inadmissible and injuriously so, and is not authorized. She was before the grand jury without the knowledge or consent of appellant; he being in jail at the time.

[7] Another bill recites that the county attorney, in his argument, made the following statement to the jury: "He shot an unarmed man; shot him in the back, because he went there to collect a bill. 'He ordered me out,

and before I got out he shot me.'" To these remarks objections were urged by the defendant. The testimony with regard to this in the dying declaration was excluded by the court. Indirectly, if not directly, through the witness Smith, the matter was placed before the jury in regard to his being the bill collector, and seeking to collect from the defendant. This statement or argument, if deemed an argument, by the prosecuting officer was unwarranted and on a crucial point in the case which had been excluded by the court in part at least, and directly so, so far as the dying declaration was concerned, and it was used illegitimately by the county attorney as an argument; and it was upon a most crucial point in the case, and was therefore not permissible. If the prosecuting officers will continue to violate the rules of argument and make statements of fact before a jury which are not permissible, or which have been excluded by the court, then they force upon this court the duty of reversing cases. They understand, or ought to understand, that when they transgress the rules far enough in the line of unwarranted argument to use matters before a jury to press a conviction, when such things are unwarranted by law and have been excluded by the court, they assume the responsibility of forcing this court to reverse judgments. The accused in Texas is entitled to a fair trial' on legitimate testimony.

There is another bill of exceptions taken to the argument of the county attorney which we would feel called upon to hold erroneous; but we do not pursue that subject further, trusting that, upon another trial of this case, these matters may not occur.

The judgment is reversed, and the cause is remanded.