## LOUIS FALCO v. THE STATE.

No. 13868.   Delivered January 14, 1931.
Rehearing Denied February 18, 1931.

The opinion states the case.

*Robert D. Peterson* and *C. R. Glass,* both of Marlin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, two years in the penitentiary.

The indictment charged burglary of the house of A. M. Peacock. The proof made was of burglary of the house of Abner Peacock. We think there was no variance between the allegation and proof. Franklin v. State, 37 Texas Crim. Rep., 312, 39 S. W., 680. Variance as to middle initials is immaterial. Spencer v. State,° 34 Texas Crim. Rep., 65, 29 S. W., 159.

A defense witness testifying to the good reputation for peace and quietude of the accused, may be asked on cross-examination by the State if he has not heard that such accused had been indicted for assault to murder. We perceive no error in the complaint of this. Branch's Annotated P. C., Sec. 184, cites cases supporting our view. Young v. State, 41 Texas Crim. Rep., 445, 55 S. W., 331; St. Clair v. State, 49 Texas Crim. Rep., 481, 92 S. W., 1095.

A witness swore that about 2 or 2:30 A. M. on the night of the alleged burglary, he saw appellant and his co-defendant near the railroad station in a car, said station being shown to be not far from the house burglarized. Over objection the witness testified that appellant and his companion asked him to hurry and leave as they were expecting some girls to come to their car. Other testimony showed that at about 2:30 or 3 A. M. on said night appellant and his co-defendant were seen in the act of removing a sack of something from said burglarized house and putting it into the car. We think it not erroneous to prove the presence of said parties near the station at the time first mentioned, also that what they said to induce the witness to leave the vicinity was admissible.

We think the special charge, the refusal of which is complained of in bill of exception No. 3, was fully covered by the main charge in so far as same was applicable.

That in defining theft the court inserted ·in his charge the clause "or from the possession of some person` holding the same for him," there being in the record no proof that the property in the house in question

was being held for the owner by anyone else,—would not seem an error, if any, capable of possible injury to the accused. Certainly not such error as would call for a reversal. See article 666, C. C. P.

Some of the witnesses against appellant were negroes. Appellant testified that on numerous occasions he had gambled with these negroes,— that they got hot or sore with each other, and cursed each other, but that beyond this he had no dealings or transactions with them. In his argument to the jury the State's attorney said:

"This defendant, who admitted he had gambled with these negroes and said he had won their money and that they had won his and would cuss at them, is the kind of man who would perjure himself to beat this case."

This was objected to apparently on the ground that there was no testimony that appellant had ever won money from these negroes, or that they had won his, and that hence the expression of said attorney's opinion that appellant won money from them and they won money from him was without testimony to support it. It certainly would not be a far-fetched inference from testimony that certain parties gambled with each other often, to conclude that some would win from others and others would win from some. The complaint in this bill of exception appears to us to have no merit.

The facts in the case seem amply sufficient to support the conclusion of guilt. A seed house located near the railroad station above referred to was burglarized apparently by the removal of a plank which was nailed to the side of the house. A witness testified that about 2:30 or 3 o'clock on the night of the burglary he saw a car standing close to said seed house, in which car was appellant, and that his co-defendant was standing with one foot on the running board of the car and that he was removing a sack from the house and putting it in the car. This witness said his attention was called at the time by hearing the "squeak" of a nail. Search of the car of appellant the following morning revealed the presence in it of cotton seed. The contents of the seed house referred to were shown to be cotton-seed in sacks.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his contention that the evidence fails to show him to have been a principal in the burglary, and challenges the correctness of the statement in our original opinion that "a witness testified that about 2:30 or 3 o'clock on the night of the burglary he saw a car standing close to said seed house, in which car was appellant, and that his co-defendant was standing with one foot on the running board of the car *and that he was removing a sack from the*

*house and putting it in the car."* It will be borne in mind that the evidence established that the burglarized seedhouse and the railroad station were near together. The witness Bartlett testified:

"I was travling across the bridge into town that night and I saw Louis Falco and Lee Matelski, and when I first got on the bridge I heard a nail squeak, and when that happened, he (Louis) raced the motor of the car, as he was sitting in the car, and had on a white shirt, and Lee Matelski had one foot on the car and the other on the seed house and was pulling at a board, and I heard somebody say 'there comes somebody.' I heard Louis say that. Yes, sir, when I came up on the foot of the bridge, the car was parked by the seed house and Lee Matelski was standing one foot on the wall and one on the car, and he gave the board a second pull and it come off, and Louis said 'there comes somebody' and Lee got in the seed house and Louis drove off. About five minutes later, I saw them again. I went around to the depot where the mail sack is, and the car come on back, and I got around the edge of the platform to see who was in the car, and Louis was in the car, and later on Lee brought a sack of seed, and put it in the car. The defendant here was in the car I saw."

The evidence quoted unquestionably makes appellant guilty as a principal. The breaking and entry of the building, that is the burglary, actually occurred while appellant was bodily present. The subsequent placing of the seed in the car by appellant's co-principal some five minutes later only evidenced the culmination of the intent with which the burglary was committed, that is the theft of the seed.

The motion for rehearing is overruled.

*Overruled.*