### J. W. Johnson v. The State.

#### No. 1281. Decided May 29, 1912.

**1.—Murder—Evidence—Dying Declaration—Undisclosed Motive of Deceased.**

Where, upon trial of murder, defendant's testimony showed that he did not know for what purpose the deceased came to his restaurant on the morning of the killing, and that he found him standing by the bedside of his wife, etc., and the court had ruled in admitting the dying declarations of deceased that the purpose for which deceased went to defendant's restaurant, to wit, to collect a bill, was inadmissible, it was reversible error to afterwards admit in evidence the purpose deceased had in returning to defendant's place of business, which was to collect a bill against him.

**2.—Same—Rule Stated—Pacific Intent of Deceased.**

The doctrine has been clearly announced in an unbroken line of decisions in this State that where the deceased has made threats against the accused, the subsequent declarations of pacific intent, not communicated to the accused are not admissible in evidence. Following Johnson v. State, 22 Texas Crim. App., 224, and other cases.

**3.—Same—Case Stated—Intent of Deceased—Evidence.**

Where the testimony for the defense showed that on a prior occasion the deceased went to appellant's house to collect money on the unpaid bill of his

principal; that trouble arose between deceased and the appellant in regard to the matter and deceased was ordered to leave defendant's place and not to return, and that deceased left making serious threats against appellant, and that on the occasion of the homicide defendant did not know why deceased had returned, and that he was found standing by the bedside of appellant's wife and that this was the beginning of the difficulty which led to the shooting, it was reversible error to admit testimony that deceased had been sent or came to appellant's place of business to collect a bill for his principal; especially when the court had ruled out such testimony in admitting the dying declarations of the deceased.

### 4.—Same—Evidence—Husband and Wife—Cross-Examination—Impeachment.

Where, upon trial of murder, defendant's wife testified for him, it was reversible error to permit the State on cross-examination to lay the predicate to impeach her as to her testimony given before the grand jury which it was claimed contradicted the testimony she gave upon trial; she having testified before the grand jury without the knowledge or consent of defendant on the process of the State. Following Brock v. State, 44 Texas Crim. Rep., 335; Woodall v. State, 58 Texas Crim. Rep., 513, and other cases.

### 5.—Same—Argument of Counsel.

Where, upon trial of murder, the State's counsel commented upon testimony which was excluded by the court, the same was reversible error See opinion cautioning prosecuting officers not to violate the rules of argument by discussing testimony which is excluded by the court.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Barry Miller.

Appeal from a conviction of murder in the second degree; penalty, fifty-one years imprisonment in the penitentiary.

The opinion states the case.

*Brooks & Worsham,* for appellant.—On question of cross-examination of wife: Welch v. State, 6 S. W. Rep., 812; Marsh v. State, 54 Texas Crim. Rep., 147; Hobbs v. State, 112 S. W. Rep., 308; Stewart v. State, 106 S. W. Rep., 685; Jones v. State, 101 S. W. Rep., 993, and cases cited in the opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at fifty-one years in the penitentiary. This is the second appeal. The first may be found in the 63 Texas Crim. Rep., 50, 138 S. W. Rep., 1021.

The dying declaration of the deceased, over appellant's objections, was permitted to go to the jury. It reads as follows and was introduced through the witness Watson, the physician who attended the deceased, McGuffey, after he was shot: "Deceased said, 'I went up to that man's place; I do not call any names, but I went up there to collect a bill. He saw me and told me to get out of his place. I told him all right to give me time, and I would get out. He run for his gun as I went out at the door, he shot me in the side' and he says, 'If you will look in the screen door,' pointing his finger at me, he says, 'you will see the hole.' Then deceased said, 'I ran up

the street, he shot me in the back and that is what is killing me.'
Deceased further states that 'appellant shot me for nothing.'" Many
objections were urged to this testimony which were overruled and
it went before the jury. After this testimony was admitted the court
took a recess for noon, and after the witness Dr. Watson had been
retired and the court re-assembled, the court instructed the jury
verbally as follows: "Gentlemen of the jury, this morning the wit-
ness on the stand testified to what purported to be a dying declara-
tion on the part of Levi McGuffey. In his testimony there occurred
this sentence: 'I went out there to collect a bill.' That much of
that testimony is stricken out. You will not consider it for any
purpose whatever. The rest of the testimony stays in." It is con-
tended in the bill, and so asserted, that this effort of the court to
withdraw the testimony but intensified the error; and that the testi-
mony was of such character that it could not be withdrawn· and that
it was highly prejudicial to appellant's legal rights and especially
in regard to his right of self-defense and apparent danger. It is fur-
ther contended that the error could not be cured by the withdrawal
of it by the court, nor by a casual statement by the court to the
jury to disregard it. The above is shown by bill of exceptions No. 2.

By bill No. 3 it is shown that the witness Smith was permitted
to testify at some length, among other things, that he had dealings
with appellant and that appellant had bought two bills of furniture
from him, one something like a year prior to this trouble, which he
had paid for; and the second bill had been running several months.
The prosecution was then permitted to ask the witness as follows:
"Q. That bill of goods necessitated somebody collecting for it, did it?
A. Yes, sir. Q. That was the contract that you had, was it not?
A. Either him to bring it in or us to send a collector, yes sir. Q. Now,
did you detail Mr. McGuffey to do that collecting? A. I hired Mr.
McGuffey to do our collecting, yes sir. Q. Was that one of his duties?
A. Yes, sir. Q. To collect from this defendant? A. Yes, sir. Q.
Now, two or three weeks, or four weeks before the killing, had Mr.
McGuffey reported to you that there had been some trouble over the
bill?" Objected to as leading and sustained. "Q. Did Mr. McGuffey,
in his lifetime, ever make any statement to you with reference to
collecting from this defendant?" Objected to and sustained. "Q. Do
you know that Mr. McGuffey went to Mr. Johnson's restaurant before
he was killed? A. Yes, sir." The bill further recites that the de-
fendant's evidence showed that defendant did not know for what
purpose the deceased· came to his restaurant on the morning of the
killing. Various objections are urged to the introduction of this
testimony. Among others, that it was irrelevant, immaterial to any
issue in the case, and that for whatever purpose the deceased had
been sent or came to defendant's place of business was unknown to
the defendant, and tended to impair his right of self-defense in
acting on real or apparent danger, and requested the court to dis-

regard this evidence. These objections were overruled and the evidence remained before the jury. These two bills, considered together, necessitate a reversal of this judgment. It is shown by Smith that the deceased, McGuffey, went there as the agent of Smith to collect for Smith for certain furniture sold to appellant. The bills further recite that appellant was ignorant of the purpose for which deceased came. Under all the authorities this testimony is inadmissible. The court recognized this in regard to the dying declarations and withdrew that particular part of the dying declaration from the consideration of the jury, as indicated by bill No. 2, in an oral instruction to that body. But the witness Smith shows that the deceased was collecting for him and went to appellant's house for that purpose. It is a difficult proposition sometimes for the courts to decide whether the withdrawal of illegal testimony cures the error. The evidence in regard to the deceased going to the residence of Johnson was one of the crucial points in the case—perhaps the most crucial. This bore directly upon two issues in the case, manslaughter and self-defense. The testimony for the defense is to the effect that on a prior occasion the deceased went to appellant's house to collect money on the unpaid bill due Smith. Trouble had arisen between deceased and the appellant in regard to the matter and the deceased was ordered not to return to appellant's house. Deceased left at the time, making serious threats against appellant. On the occasion of this tragedy the evidence for the appellant shows that he did not know, and the bill of exceptions recites, that he did not know, why the deceased was in his house. Appellant's testimony further shows that when he first observed deceased, he was standing by the bedside of his wife, who was asleep or lying down in her bed room. This was the beginning of the difficulty which led to the shooting. Under this condition of things, the undiscovered or undisclosed reason of deceased's visiting the house of appellant was illegitimate testimony and hurtful and injurious. Taking these two bills together this injury is of such a nature as requires a reversal of this judgment. Under all the authorities this testimony was clearly inadmissible and a stroke at the very keynote of appellant's legal rights in the case. See Brumley v. State, 21 Texas Crim. App., 238; Johnson v. State, 22 Texas Crim. App., 234; Pratt v. State, 53 Texas Crim. Rep., 289; Clark v. State, 56 Texas Crim. Rep., 293; Gant v. State, 55 Texas Crim. Rep., 291; Gray v. State, 47 Texas Crim. Rep., 377; Burnett v. State, 46 Texas Crim. Rep., 119; Clay v. State, 44 Texas Crim. Rep., 129; Adams v. State, 44 Texas Crim. Rep., 64; Ball v. State, 29 Texas Crim. App., 107; Darnell v. State, 58 Texas Crim. Rep., 585. The doctrine has been clearly announced in an unbroken line of decisions in this State that where the deceased has made threats against the accused, his subsequent declarations of pacific intent, not communicated to the accused, are not admissible. Johnson v. State, 22 Texas Crim. App., 224; Adams v. State, 44 Texas Crim. Rep., 64; Adams

v. State, 64 S. W., 1056; Wooley v. State, 64 S. W., 1054; Woodward
v. State, 51 S. W., 1112; Stanton v. State, 42 Texas Crim. Rep.,
271; Ball v. State, 29 Texas Crim. App., 107; Gant v. State, 55
Texas Crim. Rep., 291; Burnett v. State, 46 Texas Crim. Rep., 119;
Young v. State, 41 Texas Crim. Rep., 445; Pratt v. State, 53 Texas
Crim. Rep., 289; Nelson v. State, 58 S. W., 108; Wall v. State, 62
S. W., 1063. We think, without citing further authorities, these are
sufficient to show the thoroughly established rule in Texas.

Another bill, rather voluminous, shows that the wife testified for
the husband. On her cross-examination, the State was permitted to
lay a predicate to impeach her as to her testimony given before the
grand jury, which testimony is claimed to be contradictory of the
testimony she gave before the jury. Objections were urged both to
the predicate and the subsequently introduced evidence given before
the jury. The bill recites and shows that while her husband was in
jail she was subpoenaed and carried before the grand jury as a witness
and gave testimony which the State thought to be contradictory before
the petit jury. Upon her examination in regard to the predicate,
she stated she did not recollect certain reference to the testimony
before the grand jury, not specifically denying anything. Many
objections are urged to this testimony which we think were well,
taken. The wife can not be used as a witness against her husband.
She was carried before the grand jury, as the bill recites, under
process and there testified and the evidence was used on the final trial
against her husband under the guise of impeachment. That this
testimony could not have been used against the appellant as original
testimony is not to be questioned; yet, it is indirectly used against
him as impeaching testimony of the wife. The evidence of the wife
can not be used aganst the husband, except in cases where the offense
is by the husband against the wife, which means personal violence
against the wife. And she can not be used as a witness against her
husband, even though objection is not urged at the time. This is
not an open question in Texas. Brock v. State, 44 Texas Crim. Rep.,
335; Davis v. State, 45 Texas Crim. Rep., 295; Moore v. State, 45
Texas Crim. Rep., 237; Ray v. State, 43 Texas Crim. Rep., 236;
Spivey v. State, 45 Texas Crim. Rep., 496; Hobbs v. State, 53 Texas
Crim. Rep., 71; Stewart v. State, 52 Texas Crim. Rep., 273; Yeiral
v. State, 56 Texas Crim. Rep., 267; Woodall v. State, 58 Texas Crim.
Rep., 513. The case of Woodall, supra, is directly in point, where
the testimony of the wife was used against the defendant when that
testimony had been delivered before the grand jury. The introduction
of this evidence for any purpose was inadmissible and injuriously so
and is not authorized. She was before the grand jury without the
knowledge or consent of appellant, he being in jail at the time.

Another bill recites that the Court Attorney in his argument made
the following statement to the jury: "He shot an unarmed man;
shot him in the back because he went there to collect a bill. 'He

ordered me out, and before I got out he shot me.' " To these re-
marks objections were urged by the defendant. The testimony with
regard to this in the dying declaration was excluded by the court.
Indirectly, if not directly, through the witness Smith, the matter
was placed before the jury in regard to his being the bill collector,
and seeking to collect from the defendant. This statement or argu-
ment, if it be deemed an argument, by the prosecuting officer was un-
warranted and on a crucial point in the case which had been excluded
by the court in part at least, and directly so, so far as the dying
declaration was concerned and it was used illegitimately by the county
attorney as an argument, and it was upon a most crucial point in
the case and was therefore not permissible. If the prosecuting officers
will continue to violate the rules of argument and make statements
of fact before a jury which are not permissible, or which have been
excluded by the court, then they force upon this court the duty of
reversing cases. They understand, or ought to understand, that when
they transgress the rules far enough in the line of unwarranted argu-
ment to use matters before a jury to press a conviction when such
things are unwarranted by law and have been excluded by the court,
they assume the responsibility of forcing this court to reverse judg-
ments. The accused in Texas is entitled to a fair trial on legitimate
testimony.

There is another bill of exceptions taken to the argument of the
county attorney which we would feel called upon to hold erroneous,
but we do not pursue that subject further, trusting that upon another
trial of this case, these matters may not occur.

The judgment is reversed and the case is remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, not sitting.