## A. H. Beach v. The State.

### No. 5289. Decided March 12, 1919.

**1.—Theft—Consent of Owner—Insufficiency of the Evidence—Requested Charge—Fraudulent Intent.**

Where, upon trial of petty theft, the evidence showed that the property was taken with the consent of a person left in charge by the owner thereof, the court should have charged as requested that if this person gave his consent to the defendant and that the taking was not with fraudulent intent, the jury should acquit.

**2.—Same—Evidence—Immaterial Testimony—Impeachment.**

Upon trial of petty theft, the State should not have been permitted to attempt to impeach defendant on an immaterial matter, and but a conclusion of the witness.

**3.—Same—Argument of Counsel—Practice on Appeal.**

Where, upon trial of petty theft, the county attorney went outside of the record, indulging in undignified abuse of defendant upon questions of fact which had been ruled out as evidence the same was reversible error, although the court instructed the jury not to consider same. Following Davis v. State, 54 Texas Crim. Rep., 236, and other cases.

**4.—Same—Newly Discovered Evidence—Practice on Appeal.**

Where, the judgment is reversed and the cause remanded upon other grounds, the question of newly discovered testimony need not be considered, although possibly well urged.

Appeal from the County Court of Collingsworth. Tried below before the Hon. C. C. Small, judge.

Appeal from a conviction of petty theft; penalty, a fine of $100 and thirty days confinement in the county jail.

The opinion states the case.

*R. H. Templeton,* for appellant.—On question of impeaching witness: Brittain v. State, 47 Texas Crim. Rep., 597.

On question of argument of counsel: Wilson v. State, 194 S. W. Rep., 828; Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft of property under the value of twenty dollars.

Briefly, the case shows that appellant entered a garage, the same being the property of T. J. Stewart, at night and took an auto casing. The alleged owner Stewart testified he did not give appellant his consent to take the property. He had employed a constable named Weaver to watch his garage at night. Weaver entered the garage and occupied a back seat in one of the autos. His testimony is to the effect that early in the morning—a couple of hours before day—appellant came in the garage, and as he was getting the casing he spoke to him. They talked about the matter a little while, appellant stating that he would take the casing and would pay for it, thereupon Weaver let him leave with the casing, and opened the door so he could go out. Appellant's testimony is to the effect that, not only through himself but two of the sons of Stewart, he had a right to enter the garage and take whatever he saw proper from it, and to pay for it either at the time or have it charged; that he was interested in a drugstore with his brother Dr. Beach just across the street in front of the garage, and that by an understanding with the Stewarts he, appellant, could enter the garage and take what he saw proper, and had at times worked in the garage when the Stewart boys were in charge of it, in the absence of their father who was living in Oklahoma, and up to the time of this occurrence in August the Stewarts would go into their drugstore under the same character of conditions and contract. That he often carried the keys to the garage when young Stewart was in charge of it. That under this understanding, and as he thought with concurrence of the father, he had a right to enter the garage and take what he wanted provided he either paid for it then or later. That at this time he had occasion to want an auto casing to put on a car that he was going after a few miles distant, and that he had to go very early in the morning, that he could no find Mr. Stewart to get in the garage the night before when he ascertained he had to go for the other car; that the car he was going after belonged to an uncle; that he wanted to get this car to make a trip to Knox county: That he did go after the car seems not to be questioned, and that he took the casing that he got out of Stewart's garage with him, but when he reached his uncle's he had sold the car, and the uncle bought the casing and gave him a blank check signed to be filled out for the amount and the name of payee; that when he returned to town where the garage is situated, he ascertained there was some talk about his having entered the garage, and he went to see Mr. Stewart, who was sick at his home, and wanted to pay for it; that he had a check and if Stewart would name the price of the casing he would insert it. Stewart was not aware of the value of it at the time, and that prevented appellant

filling out the check. Appellant also testified that before he en-
tered the garage he went to the usual entrance door and knocked
on it and made a noise to wake Weaver whom he knew was on
the inside, and failing to do so he went to a window and entered
the garage in that manner, and went to the car where Weaver
was and found him asleep, shook him and waked him and told him
his mission, and that Weaver got up and got the casing and
let him out.

Quite a number of exceptions were reserved to the court's charge,
and refused special charges requested. The vital question with
reference to the charge is that the court did ñot charge, and re-
fused requested instructions, that if the jury should find that
he had the consent of Weaver to take the casing at the time he
took it, and that he did not enter the house with fraudulent in-
tent, and did not take the casing with fraudulent intent, the
jury should acquit; or if the defendant believed he had a right
to enter the garage under the circumstances indicated and take
the casing, the fraudulent intent would be absent and the jury
should acquit. We are of opinion this phase of the law should have
been given. Appellant's testimony shows that he was aware of the
fact that Weaver was in the house at the time, and his mission and
purpose of being in the house, and that he undertook to wake
him so he could get the casing that he went in the garage and
woke Weaver and did get it. This testimony raises the question
of want of fraudulent intent. Appellant should have had the
benefit of it in the charge to the jury. In a qualified sense Weaver
was in possession of the garage under a special appointment by
the owner, Stewart. In a general sense the ownership and pos-
session was in Weaver. Taking all the facts and circumstances
together we believe same justified appellant in asking the court
to charge the jury that if he took the casing with Weaver's consent,
he would not be guilty of theft. The charge should also have
presented appellant's theory of want of fraudulent intent.

There is a bill of exceptions to the effect that the court per-
mitted the county attorney to impeach appellant in regard to
matters arising out of his knowledge or want of knowledge of
the sickness of Mr. Stewart. The county attorney asked defend-
ant if he had not made inquiry concerning the health of T. J.
Stewart on the day prior to the taking of the auto casing by
asking Jeff Stewart, the young son of T. J. Stewart, and the court
compelled the defendant to answer, and defendant did answer said
inquiry by stating that he did not make inquiry concerning the
health of T. J. Stewart as he knew his condition as he saw them
take him home that day. The court then permitted Jeff Stewart
to testify that defendant on the day before the casing was taken
had asked him whether his father was sick that day. Upon another
trial we are of opinion this matter should not occur as stated in
the bill. This was impeachment on an immaterial matter.

Another bill recites that while defendant was being cross-examined by the county attorney, he was asked if he knew that T. J. Stewart had a telephone in his house, and if he tried to call T. J. Stewart that night before getting the casing. Appellant answered that he knew Stewart had a telephone, and that he tried to call him but could not get his residence. After defendant made these statements the State was permitted to show by McCauley that he, McCauley, was proprietor of the telephone exchange, and that he had a bell alarm arrangement on his telephone that never failed to ring, and that if defendant had tried to ring central that night he would have known it by the bell ringing which would have awakened him, or if this failed there would be a drop plug from defendant's telephone which would show that he had tried to ring central, and that this plug never failed to drop when there was a ring into central. Mrs. McCauley was permitted to testify to the same facts. Various objections were urged to this testimony on the ground that it was not brought out by the defendant but by the State for the purpose of impeaching defendant on immaterial matters. We are of opinion that upon another trial this should not occur as it is stated in this bill. We think the matter was immaterial, and, as claimed by appellant, was but a conclusion of the witness and argumentative opinion based on things that may not be true. The statements of McCauley were matters of opinion and guess work largely, and especially with reference to the working of his telephone and the drop of the plug, and the fact that the ringing of the bell would have awakened him. This character of impeachment was prejudicial and but a conclusion of the witness.

There is another bill showing that about the time appellant had finished testifying in his own behalf the State took him on cross-examination and asked the following questions: "It is a fact that you have been indicted in Knox County, is it not?" Objection was urged, which was sustained, on the ground that it was not a proper way to question the witness, and the county attorney changed the form of the question to this: "Then to be more specific, you were indicted for arson in Knox County, were you not?" Again objection was urged. The witness answered that he had not been indicted in Knox County, but that he had a civil suit for collecting insurance. The county attorney then asked witness: "If the suit was not in regard to collecting insurance on a building that was burned." The witness answered yes. The court sustained the objection to this testimony, and verbally instructed the jury not to consider it. Thereafter, in his closing speech, the county attorney used this language: "Defendant is a criminal, for he has been indicted in Knox County, and is the black sheep of the Beach family." Appellant urged exception because it had been ruled out by the court and the jury instructed not to con-

sider it, and the county attorney was out of the record and indulging in undignified abuse of defendant and it was prejudicial. These were sustained by the court and the county attorney requested to confine his remarks to the record. Appellant took his bill of exceptions. The court having rejected appellant's bill, wrote that here quoted, and then qualifies it with the statement that the witness answered that he was not indicted, and there was no testimony before the jury on the subject, and the jury could not have been misled. It occurs to us the reason given by the judge in his qualification is a strong reason why the remarks of the county attorney were erroneous. If there had been testimony before the jury that he had been indicted, it could be used in argument for impeachment purposes. The only reason why it could be shown appellant had been indicted for a felony was to impeach his standing as a witness. The appellant denied the fact he had been indicted, and this should have ended the matter. There was no testimony before the jury that he had been indicted for arson as sought to be proved by the county attorney. The statement of the county attorney was that appellant had been indicted when he had testified he had not been indicted. The county attorney did not take the witness stand, or testify in regard to the matter, but made statements in his speech which were unauthorized. This matter has been the subject of many decisions by this court. The writer deems it unnecessary to go into the matter or discuss it. See Davis v. State, 54 Texas Crim. Rep., 236, which is a well considered opinion written by Judge Ramsey when a member of this court. Smith v. State, 55 Texas Crim. Rep., 628; McKinley v. State, 52 Texas Crim. Rep., 182; Smith v. State, 44 Texas Crim. Rep., 137; Taylor v. State, 50 Texas Crim. Rep., 362; Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328; Wilson v. State, 81 Texas Crim. Rep., 216, 194 S. W. Rep., 828, and many cases there cited. That the judge instructed the jury not to consider it did not cure the error. See Powell v. State, 70 S. W. Rep., 218.

The question of newly discovered testimony attached to the motion for a new trial is not discussed as those matters can be brought before the jury upon another trial. We would be inclined, however, to reverse the judgment upon some of the grounds set out in the motion for a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*