## W. R. Rodgers v. The State.

### No. 6340.   Decided June 22, 1921.

### Rehearing denied February 1, 1922.

**1.—Murder—Evidence—Cross-Examination—Conclusion of Witness.**

Where, upon trial of murder, while the wife of deceased was on the witness stand and had testified that after the shooting she and her daughters immediately went to where the deceased lay and that shortly afterwards and before any one else arrived the daughters returned to the house, and she was asked on cross-examination by counsel for the defendant, "If your daughters went back from where your husband was found before anyone got there, will you tell the jury why they went back?" To which the State objected on the ground that it would be a conclusion of the witness, which objection was sustained, there was no reversible error, as the question propounded was not calculated to elicit in response that witness had seen a pistol on or about her husband's body, or had seen her daughters take a pistol from about the body, which was counsel's purpose.

**2.—Same—Evidence—Cross-Examination—Conclusion of Witness.**

Where, upon trial of murder, on cross-examination of the wife of the deceased with reference to a prior trouble about leaving a gate open by defendant, the witness stated that the deceased carried the gun down there because he knew the defendant had his gun, or imagined he did, there was no error in sustaining an objection by the State to the question, "Then how did he imagine Mr. Rodgers had a gun that caused him to carry his pistol?" This called for a conclusion and an opinion of the witness, under the facts in the instant case.

**3.—Same—Evidence—Husband and Wife—Cross-Examination—Rule Stated.**

If the wife is taken by process before the grand jury and is made to testify, her statements there cannot be proven for impeachment purposes, even though pertinent to the examination in chief; but where she voluntarily goes before the grand jury at the instance of her spouse, the accused, she can be cross-examined upon any question or matter that naturally springs out of and appertains to her testimony given on her direct examination.

**4.—Same—Husband and Wife—Cross-Examination—Grand Jury—Impeaching Testimony.**

Where, upon trial of murder, the defendant partly relied for his action in killing defendant upon insulting conduct by the deceased towards his wife, and said wife had testified that some eight days before the killing deceased came to her house and was guilty of insulting conduct toward her, which she communicated to her husband, the defendant, and it did not appear whether she appeared voluntarily before the grand jury at the instance of her husband or not, there was no error in permitting the State to show that she did not make this statement before the grand jury by the members of the grand jury who testified that the wife of the defendant had made no such statements before that body, and there was no reversible error. Following McDougal v. State, 81 Texas Crim. Rep., 179, and other cases.

**5.—Same—Case Stated—Insults to Female Relative—Rule Stated—Impeachment.**

If a wife testifies to insults as a basis for a charge of manslaughter, she may be impeached by proof of contradictory statements made either

in the absence or presence of defendant, as to what the real language or conduct was, as going to show the improbability of her telling defendant what she swears she told him. Following Proctor v. State, 54 Texas Crim. Rep., 259, and other cases; and where the inquiry on cross-examination in the *instant* case was as to a matter germane and pertinent to what deceased had said as indicated by her statement to the grand jury, there was no reversible error.

### 6.—Same—Evidence—Cross-Examination—Conduct by Trial Judge.

Where it was made to appear on trial for murder, that while the wife of defendant was upon the witness stand and being cross-examined as to what she had told in the grand jury room regarding deceased's conversation with her, objection was made and the court said, "I will overrule the objection, it goes to the credibility of the witness," to which remark exception was taken on the ground that it was a comment on the weight of the testimony as well as the credibility of the witness; but the record showed that the entire statement made by the trial judge was, "understand, Gentlemen, this evidence that is being introduced only goes to the credibility of the witness," there was no reversible error; although the testimony was not limited but no exception was taken to the charge for the omission.

### 7.—Same—Rehearing—Husband and Wife—Impeaching Testimony.

There can be no doubt that a wife when called to testify by her husband who is the defendant upon trial is subject to the same character of cross-examination as any other witness, subject only to the limitation that the cross-examination must be strictly confined to matters pertinent to the examination in chief, and where the bill of exceptions fails to show that the wife was brought before the grand jury under process not at the instance of defendant, there was no reversible error. Distinguishing Johnson v. State, 66 Texas Crim. Rep., 586, and other cases; as, the legal presumption is that the ruling of the trial court is correct. Following Edgar v. State, 59 Texas Crim. Rep., 256, and other cases.

Appeal from the District Court of Hopkins. Tried below before the Honorable Geo. B. Hall.

Appeal from a conviction of murder; penalty five years imprisonment in the penitentiary.

The opinion states the case.

*Dial Melson & Brim,* and *Wynne & Wynne,* and *Davidson & Blalock,* for appellant.—On question of remarks by court: Simmons v. State, 117 S. W. Rep., 142; English v. State, 213 id., 632.

On question of cross-examination: Johnson v. State, 148 S. W. Rep., 328, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted for the murder of one Sam Vest, his punishment being assessed at five years in the penitentiary.

Appellant and deceased were neighbors. Some trouble had arisen between them by reason of a gate leading into deceased's pasture having been left open some months prior to the killing; and also, on account of deceased's cattle getting out of his premises and into the inclosure of appellant. Threats on the part of deceased are shown

to have been made against appellant, some of which, at least, had been communicated to him. Upon one occasion, two or three months before the killing the deceased had discovered the gate leading into his pasture had been left open, and went with his wife and daughter down near the pasture gate and secreted himself in the woods to ascertain if appellant was the one who had left it open. Upon appellant coming through the gate without closing the same, deceased stepped into the road ahead of him and exhibited a pistol, and made appellant get out of his buggy and close the gate. It is a conceded fact that deceased, upon this occasion, had a pistol, and it was a controverted issue as to whether appellant had a shotgun in his buggy at the time. Upon the day of the killing deceased and his son were building fence just across the road from appellant's barn. Appellant claims about eight days prior to the killing deceased had used insulting language to his, appellant's wife, which she had communicated to him, and that upon the occasion of the killing he had for the first time seen deceased since he had been so informed; and that he killed deceased both because of the insults to appellant's wife, and because deceased was attempting to draw a pistol with which to shoot him. It was controverted as to whether deceased was armed at the time he was killed. The State's testimony supported the theory that he was down on one knee at the time he was shot, sharpening a stop to be used as a brace in the fence he was building. It is not necessary further to set out the testimony, except as it may be referred to more in detail in discussing the assignments of error. The charge of the court submitted murder, manslaughter and self-defense. No exception whatever was filed to the court's charge, and no special charges were requested. The only assignments of error are to the admission or rejection of testimony.

While Mrs. Vest, wife of deceased, was on the witness stand she was asked upon cross-examination the following question: "If your daughters went back from where your husband was found before anyone got there, will you tell the jury why they went back?" The State objected on the ground that it would be a conclusion of the witness, which objection was sustained. The bill presenting this alleged error recites that witness had already testified that after the shooting she and her daughters immediately went to where the deceased lay, and that shortly afterwards, and before anyone else arrived, the daughters returned to the house. The bill further sets out that the defense expected to show by the witness that the daughters returned to the house after they had examined the body of deceased, and taken from the body of the deceased a pistol, or what witness thought was a pistol. The question propounded was not calculated to elicit in response that witness had seen a pistol on or about her husband's body, or had seen her daughters take a pistol off of, or from about the body. If appellant had desired to develope whether such a thing occurred, the question ought to have been so framed as to get

a responsive answer. The question was only, in substance, "if they went back to the house, why did they go?" When we look to the statement of facts we find this question, in substance, had been asked witness several times, and she answered that she did not think she had said that her daughters returned to the house immediately, and then counsel put the question: "If they returned before anyone got there, why did they?" And under those circumstances the objection and ruling of the court came, in which we think there was no error. We are confirmed in this position by a further examination of the statement of facts, which shows that Mrs. Vest on rebuttal testified that her husband only had one pistol, which at the time of the homicide was hanging up in the house; that she knew it was there because after the killing the boy came in and got it and wanted to go kill appellant; she further testified that at the time her husband was killed he was in his shirt sleeves, and there was no pistol lying by him.

It appears from the evidence in the record that some months before the killing deceased and appellant had some trouble about a gate which led into deceased's pasture being left open. Deceased thought appellant had left it open; arming himself with a pistol, he went with his wife and daughter to watch, and when appellant drove through without closing the gate, deceased compelled him to get out of the buggy and close it. There was no question but that deceased had a pistol. It was a controverted issue whether appellant had a gun on that occasion. On cross-examination of Mrs. Vest with reference to the prior trouble about the gate appellant developed the following: "My husband carried the gun down there because he knew Mr. Rodgers had his gun, or imagined he did. No, we didn't talk about it. I don't remember whether my husband discussed with me his imagination that Mr. Rodgers had a gun or not. He carried his gun just because he imagined Mr. Rodgers had his gun: I don't know why he imagined it." She was then asked: "He (your husband) told you before he left the house that he knew it was Rodgers didn't he?" (That is, it was Rodgers who left the gate open). To which she replied, "No, he didn't know it was Mr. Rodgers." Then the question: "Then how did he imagine Mr. Rodgers had a gun, that caused him to carry his pistol?" The State's objection that it called for a conclusion and opinion was sustained. We find no error in the ruling of the court. The whole matter was speculative. The record makes it apparent that deceased believed it was appellant who was leaving the gate open; and whether right or wrong as to this, he armed himself and went to see about it. Appellant's contention that a further pursuit of the inquiry as to deceased's imagination and belief as to whether appellant was armed on that particular occasion would throw light on the contention that deceased was armed at the time of the homicide is a far-fetched deduction, which is untenable in the absence of a showing that deceased was expecting trouble at the time of the killing.

Bills of exceptions Numbers 7, 8, 9, 14 and 15 will be considered together, as they relate to the same subject. Mrs. Nora Rodgers testified that eight days before the killing deceased came to her house after one of his cows which had gotten into the inclosure of appellant, and that deceased on that occasion had called her a bitch, and referred to her as a God-damned whore; that she communicated this to her husband upon his return home that same evening. After the killing Mrs. Rodgers was before the grand jury, whether voluntarily or otherwise does not appear. Upon cross-examination in this trial with reference to the conduct which she claimed deceased had been guilty of towards her, and about which she says her husband was informed, the following occurred:

Q. "Did you testify before the grand jury in regard to that conversation that you had with Sam Vest?" A. "They did not ask me that direct question in the grand jury room." Q. "I will ask you if you didn't tell the grand jury in relating the conversation between you and Mr. Vest eight days before the killing, if you didn't tell the grand jury that the only thing Mr. Vest said to you was that if he had to come back up there after those cows he would make it rough?" A. "No, I didn't tell that." Q. "You didn't tell the grand jury that the only thing Mr. Vest said to you was that if he had to come back up there again he would make it rough?" A. "I didn't tell the grand jury that was all he said."

Objection was urged to requiring the witness to answer the various questions because it was making the wife testify against her husband, and because no questions had been asked her on direct examination about what she had testified before the grand jury. After the predicate was laid, two members of the grand jury were permitted to testify, over objection, that Mrs. Rodgers had testified before the grand jury that the roughest thing that Sam Vest ever said to her was that if he had to come back up there again he would come rough handed.

If the bill of exceptions made it clear that Mrs. Rodgers was taken before the grand jury under process and interrogated with reference to the conversation with deceased we would dispose of the question on the authority of the cases cited in appellant's brief. Doggett v. State, 86 Texas Crim. Rep., 98, 215 S. W. Rep., 454; Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328. These cases hold substantially, and we think correctly, that if the wife is taken by process before the grand jury, and is made to testify, her statements there can not be proven for impeachment purposes, even though pertinent to the examination in chief. But we assume that able counsel who represented appellant in this case was familiar with those opinions, and the bills of exceptions do not bring the question within the rule therein announced. So far as may be discovered from the record Mrs. Rodgers may have appeared voluntarily before the grand jury at the instance of appellant. In the absence of an affirmative showing

to the contrary we must assume there was no improper conduct on the part of the State in that regard. The pertinent objection urged was, that no question had been asked the witness on direct examination about what she had testified before the grand jury, and therefore, she being the wife of appellant, it was the development of new matter to his detriment. The general rules with reference to cross-examination of accused's wife, either generally or for impeachment purposes, have long been well recognized. The trouble this court, and the trial courts, have experienced has been in the application of the rules within the limitations of the statute in each particular case. The general propositions are correctly and tersely stated by Mr. Branch in his Anno. P. C. as follows: Section 152, page 86. "The wife may be cross-examined as to the matters testified to by her on direct examination . . . and may apply the usual tests of cross-examination as to all matters *germane* and *pertinent* to her testimony given on her direct examination." "It is error to permit the State to go into *new matter* on cross-examination of defendant's wife either for the purpose of impeachment or to draw out circumstances or statements adverse to defendant." "The wife of the defendant may be cross-examined by the State only as to such matters as *naturally spring* out of and *appertain* to her testimony given on her direct examination." We do not cite the cases, but they will be found collated under the section referred to, and the general rules were cited and approved as late as McDougal v. State, 81 Texas Crim. Rep., 179. If a female relative testifies to insults as a basis for a charge of manslaughter, she may be impeached by proof of contradictory statements, made either in the absence or presence of defendant, as to what the real language or conduct was, as going to show the improbability of her telling defendant what she swears she told him. Proctor v. State, 54 Texas Crim. Rep., 259, 112 S. W. Rep., 770; Long v. State, 59 Texas Crim. Rep., 103; 127 S. W. Rep., 554. We do not believe any error was committed in the particulars complained of. It is true the wife was not asked upon direct examination what she had told the grand jury, but she undertook to tell the trial jury what deceased had said to her, and which she claimed to have communicated to appellant. The inquiry on cross-examination was as to a matter germane and pertinent to what deceased had said, as indicated by her statement to the grand jury. It was not new matter, and naturally sprang out of and appertained to her testimony on direct examination. It aided the jury in determining whether in fact deceased did use to her what was claimed to be insulting language, and what message she conveyed to her husband in regard to the conversation. The predicate for impeachment was properly laid, and no error is discoverable from the record.

It is made to appear that while Mrs. Rodgers was upon the witness stand and being cross-examined as to what she had told in the grand jury room regarding deceased's conversation with her, objection was made, and the court said, "I will overrule the objection, it goes to the

credibility of the witness," to which remark exception was taken on the ground that it was a comment on the weight of the testimony as well as the credibility of the witness. An examination of the entire record leads us to the conclusion that the incident occurred while one of the grand jurors was testifying after a predicate for impeachment of Mrs. Rodgers had been laid. The entire statement by the court seems to have been "Understand, gentlemen, this evidence that is being introduced only goes to the credibility of the witness." The attorneys engaged in the trial already knew the purpose of it, and the statement seems to have been for the benefit of the jury, and intended as a limitation on the purpose of the testimony. The charge of the court contains no clause limiting the evidence of the grand jurors, but no exception was taken to the charge for this omission, and no special charge upon the subject was requested. We cannot construe the statement as a comment by the court on the weight of the testimony, nor as an expression as to his opinion of the credibility of any witness. but merely a statement as to the purpose and limitation of the offered testimony. We do not regard the incident as hurtful to appellant.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

## ON REHEARING.

### February 1, 1922.

HAWKINS, JUDGE.—Attorneys for appellant in their motion for rehearing insist with so much earnestness that we were in error in our original opinion in holding that under certain circumstances the wife of appellant might be impeached by statements made by her before the grand jury we have again examined this question. Our more complete investigation has confirmed us in the correctness of the conclusion we reached formerly, but it has also revealed that our decisions are not in harmony. The cases of Exon v. State, 33 Texas Crim. Rep., 469; Young v. State, 54 Texas Crim. Rep., 420, and Brown v. State, 61 Texas Crim. Rep., 334 are not in harmony with Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328; Doggett v. State, 86 Texas Crim. Rep., 98, 215 S. W. Rep., 454 and Turner v. State, 89 Texas Crim. Rep., 615, 232 S. W. Rep., 801. The Johnson case, *supra,* makes no reference to the Exon, Young or Brown cases but seems to depart from the doctrine announced therein without dissent. In Perry v. State, 69 Texas Crim. Rep., 184, the question was raised but disposed of as being brought forward by insufficient bill. No cases are cited, but to our minds this rather significant language is found in that opinion, "The record does not disclose at whose instance she (the wife) testified on this inquest proceeding, whether introduced by the appellant or by the State." The Doggett case follows the Johnson case. In Turner's case, *supra,* we followed the Johnson and Doggett

cases and in our original opinion in the instant case we expressed the view that where the record shows the wife was taken before the grand jury under process and without the husband's consent the Johnson and Doggett cases announced the correct rule.

Returning to the question directly before us for consideration; there can be no doubt that a wife when called to testify by her husband who is the defendant upon trial, is subject to the same character of cross-examination as any other witness, subject only to the limitation that the cross-examination must be strictly confined to matters pertinent to the examination in chief. The general rule is so stated in Encyclopedia of Evidence, vol. 6, p. 892. Texas cases to this same effect will be found collated in Branch's Criminal Laws of Texas under Section 852.

That the wife may be impeached by proof of contradictory statements to third parties as to material matters inquired about on her direct examination is well established by the authorities of this State. (See Branch's Criminal Law, Section 853, and cases therein cited, and also authorities collated under Section 153 of Branch's Annotated Penal Code.) That the ordinary witness may be impeached by contradictory statements made by him before the grand jury is not an open question. (For authorities collated on this latter proposition see Branch's Crim. Law, Section 871, page 554.) It being settled that a husband or wife may be impeached by showing declarations made by them to a third party which are contrary to their testimony upon the witness stand, if pertinent to the examination in chief, we have been unable, in view of all of our authorities, to reach the conclusion that a husband or wife who testifies before the grand jury voluntarily and at the instance of the spouse who may be under investigation, should not be subject to the same rule of impeachment with reference to contradictory statements made before that body. Certainly they are under no less obligation to speak the truth before the grand jury than when talking to a neighbor or friend on the streets or elsewhere. It is not an instance of the calling of either husband or wife to testify against the other, for if that rule should be followed to its logical conclusion the same objection would prevent the State from proving a contrary declaration made to a third party, because, in a sense, all impeachment evidence is against the party to the detriment of whose interest it is introduced. Indeed, this was the objection urged where the State has sought to prove contradictory statements by the husband or wife to third parties, and the objection held to be untenable. In the instant case the bill of exception fails to show that the wife was brought before the grand jury under process, not at the instance of appellant. It does not in our opinion bring the question within the rule announced in the Johnson and Doggett cases. If a husband accused of crime and under investigation before the grand jury should cause his wife to go before that body to testify to things favorable to him and she should make statements contrary to her testimony after-

wards given on the trial which were pertinent to her examination in chief and as to a material matter, it could be urged with little logic, we think, that her contradictory statements made before the grand jury should not be provable to impeach her as in contravention of the statute.

The legal presumption is that the ruling of the trial court was correct unless the bill of exception shows otherwise. Moore v. State, 7 Texas Crim. App. 20; Edgar v. State, 59 Texas Crim. Rep. 256, 127 S. W. Rep., 1053; James v. State, 63 Texas Crim. Rep., 77, 138 S. W. Rep., 612; Harris v. State, 67 Texas Crim. Rep., 251, 148 S. W. Rep., 1074; Ortiz v. State, 68 Texas Crim. Rep., 524, 151 S. W. Rep., 1058; Anderson v. State, 70 Texas Crim. Rep., 594, 157 S. W. Rep., 1197; Zweig v. State, 74 Texas Crim. Rep., 306, 171 S. W. Rep., 751.

The respectful manner in which the motion for rehearing upon this issue has been urged before this court has caused us to make a more thorough investigation of the matter than upon the original hearing, but we have been unable to agree with counsel in their earnest contention.

The motion for rehearing is therefore overruled.

*Overruled.*