## Loys Wilson v. The State.

No. 12821.   Delivered June 25, 1930.
Rehearing denied October 22, 1930.
Reported in 31 S. W. (2d) 815.

The opinion states the case.

*Butler, Price & Maynor* of Tyler, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

On the question as to the admissibility of testimony showing that the witness visited the appellant's wife after the killing and that the latter said to the witness that she was not the cause of appellant's killing deceased, appellant cited McDougal v. State, 194 S. W. 944; Nami v. State, 263 S. W. 595, Section 16; Mauley v. State, 137 S. W. 1137; Sorrell v. State, 169 S. W. 303; Drake v. State, 143 S. W. 1157; Marsh v. State, 112 S. W. 323; Watson v. State, 95 S. W. 115; Woodward v. State, 97 S. W. 502; Bateson v. State, 80 S. W. 88; Medina v. State, 63 S. W. 332; Williams v. State, 51 S. W. 226.   ·   *Reporter.*

MARTIN, JUDGE.—Offense, murder; penalty, three years in the penitentiary.

The appellant was in the garage business in the little town of Troupe.   The deceased was pastor of the Baptist Church at that place.   On the day of the tragedy deceased was conversing with friends when appellant approached him saying, "Prepare to meet your God," and shot him.   The facts surrounding the killing are practically undisputed.   Appellant's own testimony is regarded as raising only the issue of a killing "without malice aforethought," arising from previous relations alleged to exist between deceased

and appellant's wife, of which appellant had been apprised by his wife prior to the tragedy. The testimony for appellant, given in most part by his wife, shows that sexual relations had existed between herself and deceased for several months preceding the killing; that she and appellant had separated once over such matter and became reconciled, she promising to let deceased out of her life. It also appears that deceased made the same promise; that shortly thereafter the previous relations were resumed, which resulted as above indicated. The cause of the killing was the only real fact issue before the jury. The appellant's theory was vigorously combatted by the State.

By Bill of Exception No. 6 it is made to appear that after the killing appellant left his home in Troupe, where he saw and spoke to his wife to go to Tyler and surrender to the Sheriff; that thereafter a Mrs. Gee visited appellant's wife and was permitted over objection to testify that at that time and place she heard appellant's wife say that she was not the cause of appellant killing deceased and that she thought that Loys (appellant) was just joking about the deceased and that she didn't believe it. This was objected to as hearsay and as proof of an opinion and conclusion. Since the point presented has apparently been the subject of some contrariety of opinion, we deem it best to refer to and discuss some of the authorities on the subject.

We take the following from Mr. Branch's Penal Code:

"Cross-examination is not a device by which the State is entitled to lay predicates as to matters about which the wife of defendant could not be cross-examined or contradicted, or to get before the jury her opinions of defendant's guilt, or her apprehensions of danger, or her hearsay statements as to new matter." Branch's P. C., P. 87, where the following authorities are cited: Bluman v. State, 33 Tex. Crim. Rep. 64, 26 S. W. 75; Hamilton v. State, 36 Tex. Crim. Rep. 375, 37 S. W. 431; Gaines v. State, 38 Tex. Crim. Rep. 228, 42 S. W. 385; Merritt v. State, 39 Tex. Crim. Rep. 79, 45 S. W. 21; Spivey v. State, 45 Tex. Crim. Rep. 498, 77 S. W. 444; Hobbs v. State, 53 Tex. Crim. Rep. 82, 112 S. W. 308; Richards v. State, 53 Tex. Crim. Rep. 413, 110 S. W. 432; Marsh v. State, 54 Tex. Crim. Rep. 147, 112 S. W. 321; Young v. State, 59 Tex. Crim. Rep. 137, 127 S. W. 1059; Johnson v. State, 148 S. W. 328.

Of these authorities we mention only the Bluman case. Appellant in this case was indicted for arson. He placed his wife on the witness stand and proved by her that her trunks containing her

514

wedding trousseau and other articles were in the building and that they were burned up. Upon cross-examination she was asked this question: "Did you not, at the hotel, on the night of the fire, after the fire had broken out, state that you had a presentiment that something was going to happen?" To which she answered in the affirmative. Discussing this the Court said:

"For what purpose could the jury have used this matter? Evidently to prove that appellant had determined to burn, or have burned, his store, and had directly or indirectly informed his wife of his intention. The State certainly desired to use it for this purpose. There was no other possible use to which it could be applied."

In the case of Marsh v. State, 54 Tex. Crim. Rep. 144, Judge Ramsey speaking for the Court lays down a rule which we regard as controlling the disposition of the question under discussion. In that case appellant and his wife lived in Cisco and deceased lived in an adjoining county. Appellant went to the residence of' deceased and killed him, defending at the trial upon the ground of previous insults to his wife by deceased. Appellant used his wife as a witness, proving these insults by her. Upon cross-examination she was asked:

"Q. I ask you if on the night you got the news that your husband had shot Jodie Baggett, in the town of Cisco, Eastland County, if you did not say to Will Brown on that night when he asked you what caused the trouble, that you told him, nothing at all but a foolish remark. I will ask you if you did not say this, 'it was nothing in the world that caused the trouble except a foolish remark of Cathaleen Adams.'"

The witness over objection answered: "No, I did not." Thereupon the witness Will Brown was placed upon the stand and testified that witness had made such remark. Discussing this the Court says:

"It formed no part of the transaction or the conversation or matter inquired of from Mrs. Marsh on her original examination. It wholly related to another transaction subsequent to the killing, and was not receivable either for the purpose of impeachment or as a circumstance adverse to appellant. *Again, we think the testimony was objectionable in that it called for the opinion of the witness as to the killing.*"

The question under discussion was again before this Court in the case of McDougal v. State. Upon the first appeal of this case, reported in 79 Tex. Crim. Rep. 254, Judge Harper speaking for

the Court held such testimony admissible but reversed the case upon another point. On the second appeal of the case, reported in 81 Tex. Crim. Rep. 179, Judges Morrow and Davidson, with Judge Prendergast dissenting, held the testimony inadmissible and Judge Morrow writing for the Court reviewed the authorities exhaustively. In the McDougal case appellant's wife was an eye-witness to the killing and testified to facts tending to show that deceased was the aggressor and was attacking appellant with a knife at the time he was killed. Upon cross-examination she was asked if she did not state to witness Vickery that appellant had killed deceased because he sued him, that she tried to keep him from it but couldn't do it. Having denied making the statement, witness Vickery was placed on the witness stand and over objection was permitted to testify that she did make such statement a short time after the killing in the defendant's absence. The objections to this testimony are identical with those shown in Bill of Exception No. 6 under consideration. Discussing this the Court says:

"The statement imputed to Mrs. McDougal to the effect that her husband killed deceased 'because he sued him' does not purport to relate any fact, but only a conclusion supposed to have been drawn by her from the facts obtained by her from an undisclosed source. It touched a vital issue—the cause of the homicide. That appellant killed the deceased was not in question. The reason for it was the subject of the trial. The evidence complained of should have been excluded."

For other cases, see Watson v. State, 50 Tex. Crim. Rep. 171; Woodward v. State, 50 Tex. Crim. Rep. 294; Hobbs v. State, 53 Tex. Crim. Rep. 71; Renn v. State, 64 Tex. Crim. Rep. 658. Many authorities are cited in the McDougal case, supra, by Judge Morrow to show that mere conclusions and opinions of witnesses are to be rejected.

Adverting to the testimony shown in Bill No. 6, we are not able to distinguish it from the authorities cited. That it may have tended to contradict the testimony of appellant's wife given on her direct examination is not the question. The wife was not present at the killing. It was not the statement of any fact by her. It could undoubtedly have been understood by the jury as her opinion based upon communications made to her by her husband, which by the express terms of the statute could not be used against him. The statement as in the Marsh case related entirely to a transaction happening after the killing and was a conclusion that the killing didn't

happen because of the matters testified to by appellant and tended of course to destroy the only defense offered. How could she know what was in appellant's mind when he shot deceased, unless he had told her? It was either mere conjecture, or the conclusion she formed from statements made by him to her. The former is never admissible, and the latter is interdicted by statute, unless gone into by the accused, which was not done in this case. What the State could not prove directly, manifestly could not be proven indirectly. We assume it was not thus intended to violate the statute, which leaves it in its last analysis as a pure opinion or conjecture, concerning the admissibility of which there should be no room for controversy.

By Bill of Exception No. 4 the admissibility of certain testimony is raised which relates to a purported communication made to appellant concerning the deceased and an unknown woman alleged to have occurred a short time before the killing on the river. Without going into this matter in detail, we doubt the sufficiency of the bill to present the question, which is argued in the brief, in that the description given of the woman and the attending facts are not such as to enable us to say that her identity as the wife of appellant was sufficiently shown. If on another trial her description, together with the attending facts are such as to reasonably indicate to appellant that such person was his wife, it should be admitted, if offered.

We pretermit discussion of such matters as will likely not again occur.

For the error discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In a motion for rehearing it is contended in behalf of the State that the error in receiving the testimony of Mrs. Gee to the effect that the wife of the appellant declared that she was not the cause of the appellant killing deceased and that she thought Loys was just joking about the deceased, was harmless. That is to say, it could have exerted no influence upon the jury. Of course, if, from the record, it is manifest that the testimony mentioned could not and did not injure the appellant, its

reception in evidence would not justify a reversal of the judgment. The court instructed the jury in substance that if they should determine that in killing the deceased the appellant was actuated by malice aforethought, he should be convicted of murder and his penalty assessed at death or confinement in the penitentiary for any term of years not less than two. The jury was likewise instructed that unless they believed that in killing the deceased the appellant acted upon malice aforethought and should convict him, that he would be found guilty of murder but the penalty assessed could not exceed confinement in the penitentiary for five years. This charge was in accord with the statute which fixes the penalty for murder without malice at confinement in the penitentiary for a period of not less than two nor more than five years. In deciding whether the appellant acted upon malice or without malice in killing the deceased, the evidence in question was important. It bore directly upon the cause of the killing. The issue of malice was affected by whether the deceased was killed by reason of his undue relations with the wife of the appellant. On the trial she testified in favor of the accused upon that issue. According to the testimony of Mrs. Gee, the wife of the appellant, immediately after the killing, declared that she was not the cause of the killing. This remark was made soon after the appellant had visited his wife to whom he went immediately after he killed the deceased. The surrounding circumstances are such as might have impelled the jury to regard the declaration of the appellant's wife to Mrs. Gee as her interpretation of the conversation with her husband, who at the moment had gone to surrender to the sheriff. Whether the testimony was appropriated by the jury against the appellant, this court cannot determine. That it might have been so appropriated seems obvious. There is no absolute means by which the court can determine its effect upon the jury. The penalty assessed against the appellant, as it was stated in the court's charge, was more than the minimum for murder with malice and more than the minimum for murder without malice. The appellant's request for a suspended sentence was denied by the jury. That the testimony was improper is not deemed debatable. That there was error in receiving it is demonstrated by the original opinion. The error being manifest and its effect uncertain, we feel constrained to resolve the doubt as to the consequences of the error in favor of the accused.

The motion is overruled.

*Overruled.*

HAWKINS, J., absent.