ETHEL JOHNSON v. THE STATE.

No. 18457. Delivered May 27, 1936.

The opinion states the case.

*Maury Hughes,* of *Hughes & Monroe,* of Dallas, and *Tom Mears* and *Harry Flentge,* both of Gatesville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was convicted of the offense of murder with malice, and her punishment was assessed at confinement in the state penitentiary for a term of twenty-five years.

The record before us shows that the appellant, her son (Joe Deane Blakenship), and his wife were visiting at the home of the appellant's father and mother, Mr. and Mrs. George Middick. On the 10th day of August, 1934, at about eleven a. m. some shots were heard in the direction of the back porch of the home of Mr. George Middick. An investigation disclosed that Joe Deane and his wife were lying on the back porch with a bullet wound in the head of each of them. Bernice, the wife of Joe Deane, had a thirty-two calibre pistol in her hand which carried two empty shells indicating that the pistol had been fired twice. Joe Deane was shot near the left eye and the bullet ranged a little upward to the right side. His wife, Bernice, was shot just back of the right ear at the lower edge of the hair line. The State's theory was that the appellant committed the homicide in order to collect three thousand dollars insurance which deceased carried in some mutual company payable to the appellant. Appellant's theory was that Bernice killed her husband, Joe Deane, and then killed

herself. This theory was based on a note purported to have been written by Bernice and which reads as follows: "Dear Family: I'm telling you right now I'm tired of it. There's no one of you all will help me and you're all able to do so I'm getting out of this mess. Don't punish anybody as I'm doing it all myself. Let the shrouding be pure white. Bernice, Goodbye to all." They base the theory of suicide on the further fact that if appellant shot Joe Deane, his wife would have fled from the scene; or if appellant shot Bernice first, her son would have taken the pistol from her.

Bills of exception numbers one, two, and three will be considered together as they relate to the same matter.

Bill of exception number one reflects the following occurence. The county attorney in discussing the question of the suicide note made the following statement to the jury: "This suicide note was found in the home of the defendant two weeks before the tragedy"—to which the appellant objected on the ground that there was no testimony of that nature and the same was an unsworn statement by counsel. Whereupon the county attorney made the following statement: "I was here at the former trial and it (the evidence) was a little different."— to which the appellant again objected and said objection was overruled. Thereupon the defendant requested the court to instruct the jury to not consider the argument for any purpose, which the court overruled and the appellant excepted. The court qualified said bill and in his qualification states that the following language was used: "If you had been the mother, mother-in-law or father-in-law of the ones that had been killed, and two weeks before you had come in and found them writing such a note in your home"—at which time appellant objected in that there was not any testimony to that effect. Whereupon the county attorney said: "I beg your pardon. I was here at the former trial and it was a little different." The court further certifies that there was no evidence in the record of the finding of the suicide note two weeks or at any time prior to the killing.

Bill of exception number two reflects the following occurrence. The county attorney in his argument to the jury pointed to the defendant in the presence of the jury and made use of the following language: "We do find, gentlemen, that people become so self-centered, so warped in their thinking, so perverted in their mind that they can kill their own offspring as a wild brood sow does her young. She is no real Mother. She is a beast. She is shorn of all the virtues of Motherhood."—

to which appellant objected on the ground that the same was improper, highly inflammatory, abusive, and unwarranted; and requested the court to instruct the jury to not consider said argument for any purpose; all of which was overruled by the court. The court qualified the bill of exception and in his qualification states that the language used was as follows: "We do find, gentlemen, that people become so self-centered, so warped in their thinking, so perverted in their mind that they can kill their own offspring as a wild brood sow does her young. Joe Dean Blakenship, if brought into this court room, would say, 'No, that is not my mother, she is shorn of all the attributes of mother-hood.' He would say that woman that sat in the front room and didn't come and kneel by me and take me in her arms and say 'this is my son.' He would say 'No this is not my mother, that is a beast.'"

Bill of exception number three reflects the following occurrence. The special prosecutor in his closing argument to the jury made use of the following language: "The deceased's father taught her how to write. He knew her handwriting as well as he knew her face and he knows and he has stated that the alleged suicide note is a forgery and that she did not write the same"—to which the appellant objected on the ground that it was highly improper and the making of an unsworn statement to the jury upon a vital fact upon which hinged and turned the entire case and because the same was stating a fact not in evidence. The court overruled the objection and defendant excepted. Thereafter said special prosecutor turned immediately to the father of the deceased, holding the purported suicide note in his hand and pointing to him, said: "Mr. Davenport, isn't that note a forgery?" To which Mr. Davenport nodded his assent and said, "Yes"; to all of which appellant objected on the ground that it was injecting new testimony in the case, that it was an unsworn statement of the father of the deceased as well as an unsworn statement of counsel. She requested the court to instruct the jury not to consider the same, all of which was overruled and the defendant excepted. We think the appellant's position is well founded because the court permitted the State to get before the jury in the closing arguments an unsworn statement of the father of the deceased, Bernice, without an opportunity to cross-examine him with reference thereto. The abusive language which the county attorney in his closing argument applied to the appellant was not a reasonable deduction from any testimony. It was neither argument, nor logic, and should have not been per-

mitted. See Stevenson v. State, 48 Texas Crim., Rep., 601; Crawford v. State, 15 Texas App., 501.

The statement and the act of the special prosecutor while making his closing remarks to the jury as shown in the bill of exception duly approved by the trial court was unwarranted and was an attempt to supply material testimony upon the most crucial issue in the case. Prosecuting attorneys in their argument should confine themselves to a discussion of the testimony adduced upon the trial before the jury and not go outside of the record and themselves bring in material facts not in evidence. We are of the opinion that the matters reflected in bills numbers one and three were of such a prejudicial nature as to require a reversal of this case. In support of the views herein expressed we refer to the following authorities: Johnson v. State, 148 S. W., 328; Paris v. State, 62 Texas Crim. Rep., 354; Grimes v. State, 64 Texas Crim. Rep., 64; Harwell v. State, 61 Texas Crim. Rep., 233; Tillery v. State, 24 Texas App., 251.

We pretermit a discussion at this time of the appellant's contention that the testimony is insufficient to sustain appellant's conviction.

For the errors herein pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.